[Cite as *State v. Brandenburg*, 2021-Ohio-2875.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellant, | : | CASE NO. CA2020-09-055 |
| | : | O P I N I O N |
| - vs - | | 8/23/2021 |
| | : | |
| JONATHAN R. BRANDENBURG, | : | |
| Appellee. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2019 CR 01130

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas Horton, Assistant Prosecuting Attorney, for appellant.

W. Stephen Haynes, Clermont County Public Defender, and Robert F. Benintendi, Assistant Public Defender, for appellee.

**HENDRICKSON, J.**

{¶1} Appellant, the state of Ohio, appeals from a decision of the Clermont County Court of Common Pleas granting a motion to suppress filed by appellee, Jonathan Brandenburg. For the reasons detailed below, we affirm in part, reverse in part, and remand this matter for further proceedings.

{¶2} On November 14, 2019, Brandenburg was indicted on one count of

aggravated possession of drugs in violation of R.C. 2925.11, a fifth-degree felony. The charge arose after Brandenburg was stopped for a traffic violation. The police officer who initiated the traffic stop searched both the vehicle and Brandenburg and discovered methamphetamine in his wallet. Brandenburg pled not guilty.

{¶3} In March 2020, Brandenburg moved to suppress the evidence discovered as a result of the officer's stop and search of the vehicle, as well as the search of his wallet. At the suppression hearing, Officer Tyler Fannin testified that he initiated a traffic stop after observing that Brandenburg did not have a rear license plate light. When the vehicle stopped, Officer Fannin approached the driver's side window, advised Brandenburg about the reason for the stop, and retrieved his identification.

{¶4} Officer Fannin returned to his cruiser and confirmed that Brandenburg did not have any outstanding warrants. At that point, Officer Fannin acknowledged that he completed his review of Brandenburg's records and there were no warrants or reason to detain him any further. Officer Fannin stated that he could have written Brandenburg a citation for the license plate violation and released him from the stop. However, Officer Fannin did not write the citation and instead chose to reapproach Brandenburg's vehicle to request consent to search. Officer Fannin testified that Brandenburg consented to the search. After searching the vehicle and discovering no illegal contraband, Officer Fannin asked to search Brandenburg's wallet. Again, Officer Fannin testified that Brandenburg consented to this search. When he proceeded with the search of the wallet, Officer Fannin located a clear plastic bag containing a crystal substance later determined to be methamphetamine. After removing the suspected narcotic, Officer Fannin returned the wallet to Brandenburg and issued him a citation for the license plate violation.

{¶5} Brandenburg had a different recollection of the traffic stop. According to him, Officer Fannin asked to search the vehicle as soon as he pulled him over. Brandenburg

claimed that he denied Officer Fannin's request. However, when Officer Fannin approached his vehicle the second time, Brandenburg claimed that Officer Fannin gave him an ultimatum—either allow him to search the vehicle or face serious consequences. Because of this threat, Brandenburg testified that he felt compelled to consent to both the search of the vehicle and the search of his wallet.

{¶6} After consideration of written closing arguments, the trial court granted Brandenburg's motion to suppress. In its decision, the trial court found that Officer Fannin had completed his investigation into the original purpose for the stop and the ordinary inquiries incident to the stop. At that point, the trial court found that Officer Fannin should have ended his investigation unless he could present articulable facts giving rise to a suspicion of illegal activity. Instead, the trial court found that Officer Fannin engaged in an improper detour in the otherwise lawful traffic stop by requesting consent to search Brandenburg's vehicle—a request unrelated to the purpose of the stop. Continuing, the trial court found that Officer Fannin did not have any reasonably articulable facts or individualized suspicion to justify Brandenburg's further detention in order to request consent to search the car and, later, Brandenburg's wallet. Concluding that this ended the analysis, the trial court did not consider it necessary to determine whether Brandenburg had provided "consent to search." The state appeals the trial court's decision, raising two assignments of error for review.

{¶7} Assignment of Error No. 1:

{¶8} THE TRIAL COURT ERRED IN SUPPRESSING THE EVIDENCE AS APPELLEE CONSENTED TO A SEARCH WITHIN THE TIME NECESSARY TO ISSUE A CITATION.

{¶9} Assignment of Error No. 2:

{¶10} THE TRIAL COURT ERRED IN SUPPRESSING THE EVIDENCE AS IT

FAILED TO CONSIDER THE EFFECT OF APPELLEE'S VOLUNTARY CONSENT.

{¶11} In its first assignment of error, the state alleges the trial court erred in suppressing the evidence—the methamphetamine—obtained following the search of Brandenburg's wallet. The state argues that Brandenburg consented to the search within the time necessary to issue him a citation. In its second assignment of error, the state alleges the trial court erred by concluding that it was not necessary to consider whether Brandenburg had consented to the search after it had concluded that Officer Fannin did not have any reasonable or articulable facts to continue the detention.

{¶12} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Shaibi*, 12th Dist. Warren No. CA2020-07-038, 2021-Ohio-1352, ¶ 24. The trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-Ohio-05-012, 2015-Ohio-828, ¶ 8. Therefore, when reviewing a trial court's decision on a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Turner*, 163 Ohio St.3d 421, 2020-Ohio-6773, ¶ 14. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶13} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable automobile stops." *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 11. "When a defendant files a motion to suppress alleging the traffic stop constituted an unlawful seizure, 'the state bears the burden of demonstrating the validity of

[the] traffic stop.'" *State v. Turner*, 12th Dist. Clermont No. CA2018-11-082, 2021-Ohio-541, ¶ 11, quoting *State v. Bui*, 6th Dist. Lucas No. L-19-1028, 2021-Ohio-362, ¶ 29. Similarly, "[o]nce a warrantless search is established, the burden of persuasion is on the state to show the validity of the search." *Xenia v. Wallace*, 37 Ohio St.3d 216, 218 (1988).

{¶14} Ohio recognizes two types of lawful traffic stops, each requiring a different constitutional standard. *State v. Ratliff*, 12th Dist. Butler No. CA2019-09-163, 2020-Ohio-3315, ¶ 6-7; *State v. Layne*, 12th Dist. Clermont No. CA2009-07-043, 2010-Ohio-2308, ¶ 45. One is a typical noninvestigatory stop where an officer directly observes a traffic violation, giving rise to probable cause to stop the vehicle. *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769 (1996). The second type of stop is an investigative or "Terry" stop, which occurs where an officer has a reasonable suspicion based upon specific and articulable facts that criminal behavior has occurred or is imminent. *State v. Hinkston*, 12th Dist. Clermont No. CA2020-03-012, 2020-Ohio-6903, ¶ 15, citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868 (1968).

{¶15} This case involves the first type, a noninvestigatory stop after the observation of a traffic violation. It is well established that when the police stop a vehicle based on probable cause that a traffic violation has occurred, the stop is reasonable under the Fourth Amendment. *Dayton v. Erickson*, 76 Ohio St.3d 3 (1996), syllabus. "During a traffic stop, a law enforcement officer may detain a motorist for a period of time sufficient to issue a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration, and vehicle plates." *State v. Hill*, 12th Dist. Warren No. CA2015-05-044, 2015-Ohio-4655, ¶ 8, citing *State v. Grenoble*, 12th Dist. Preble No. CA2010-09-11, 2011-Ohio-2343, ¶ 28. "Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate th[at] purpose.' * * * Authority for the seizure thus ends when tasks tied to the traffic infraction are — or

reasonably should have been — completed." *Shaibi*, 2021-Ohio-1352 at ¶ 26, quoting *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319 (1983).

{¶16} However, the detention of a stopped motorist "may continue beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 15. Where reasonable and articulable suspicion of criminal activity exists, "[t]he officer may detain the vehicle for a period of time reasonably necessary to confirm or dispel his suspicions of criminal activity." *State v. Williams*, 12th Dist. Clinton No. CA2009-08-014, 2010-Ohio-1523, ¶ 18.

{¶17} In the present case, it is undisputed that Officer Fannin was permitted to affect a traffic stop after observing that Brandenburg's vehicle did not have a rear license plate light. *See* R.C. 4513.05 (Illumination of rear license plate). It is also undisputed that Officer Fannin was permitted to detain Brandenburg for that period of time necessary to issue a traffic citation, verify his driver's license, and conduct "ordinary inquiries incident to [the traffic] stop." *See e.g., Shaibi*, 2021-Ohio-1352 at ¶ 28, citing *Illinois v. Caballes*, 543 U.S. 405, 408, 125 S.Ct. 834, (2005). The issue in this case, however, is whether Officer Fannin unconstitutionally prolonged the detention prior to requesting Brandenburg's consent to search his vehicle and wallet.

{¶18} The trial court found that Officer Fannin had completed the purpose of his stop and resolved the ordinary inquiries incident to that stop prior to requesting consent to search Brandenburg's vehicle. Therefore, the trial court determined that Officer Fannin unconstitutionally prolonged Brandenburg's detention by requesting consent to search the vehicle and, later, Brandenburg's wallet. On appeal, the state contends the trial court erred by suppressing the evidence obtained during the searches and compares the facts in this case to those in *State v. Sexton*, 12th Dist. Butler No. CA2019-08-133, 2020-Ohio-4179.

{¶19} In *Sexton*, the driver of a vehicle was pulled over after leaving a residence that was the subject of multiple drug complaints. *Id.* at ¶ 3. The detective assigned to the case observed the driver fail to activate his turn signal and therefore affected a traffic stop. *Id.* at ¶ 6. After obtaining the driver's license, the detective returned to his vehicle and requested a K-9 unit. *Id.* at ¶ 8. When he reapproached the vehicle, the detective requested and was granted consent to search the vehicle; later, the driver consented to the search of his person. *Id.* at ¶ 11, 13. After searching the driver's clothing and shoes, the detective located a small amount of methamphetamine. *Id.* at ¶ 14.

{¶20} On appeal, this court concluded that the detective requested and obtained consent to search during the period of time reasonably necessary to process a traffic citation. *Id.* at ¶ 27. This conclusion was based on the timeline presented during the suppression hearing, including testimony that the traffic stop had not ended when the detective asked for consent. *Id.* at ¶ 35. This court also determined that, based on the evidence presented during the suppression hearing, the detective could have reasonably extended the stop to investigate a reasonable articulable suspicion that the driver was engaged in drug activity. *Id.* at ¶ 29.

{¶21} Following review, we find the trial court did not err by granting Brandenburg's motion to suppress. Though Officer Fannin's initial reason for the stop was lawful, the record here reflects that Officer Fannin had completed the investigation of the license plate violation and the ordinary inquiries incident to that stop. Clearly, Officer Fannin did not need to search Brandenburg's vehicle to investigate the license plate violation, nor did the state argue that there were articulable facts giving rise to a suspicion of illegal activity justifying additional investigation. Rather, unlike in *Sexton*, Officer Fannin testified that the purpose of the stop was complete, and his only remaining task was to request to search the vehicle. According to Officer Fannin:

Q. Okay. So then you went back to the vehicle; what did you do at that point?

At that point, his license was run through my MDC and the checks were done on MDC.

Q. Okay. And was there any reason to wait further to issue a ticket at that point?

I was going to reapproach and ask to – for verbal consent to search the vehicle.

Q. But at that point, you had – you already knew he had no warrants, right?

Correct.

Q. That his registration was good?

Correct.

Q. So you really had no further reason to detain him at that point, right?

Just to ask him to search the vehicle.

Q. So that was the – basically, the stop was completed at that point and then you approached to ask that question?

Correct.

Upon continued cross-examination, Officer Fannin clarified that after he took Brandenburg's license, confirmed that he had no warrants and that his registration was up to date, he could have "written a citation and ended the stop there," but that is "not what occurred."[1]

{¶22} Based on the evidence produced at the suppression hearing, Officer Fannin's only stated reason for extending his investigation was to request consent to search Brandenburg's vehicle. As the Ohio Supreme Court has explained:

[w]hen a police officer's objective justification to continue detention of a person stopped for a traffic violation for the

---

1. This clarification was made after the state noted that Officer Fannin had not verified ownership or the right to use a U-Haul trailer attached to Brandenburg's vehicle. The trial court noted that this was "apparently a matter of choice," and emphasized Officer Fannin's acknowledgement that the stop was complete.

- 8 -

purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure.

*State v. Robinette*, 80 Ohio St.3d 234 (1997), paragraph one of the syllabus. Accordingly, since the lawful basis for Brandenburg's continued detention had ceased, the continued detention in order to seek consent to search Brandenburg's vehicle was an unreasonable search and seizure under the Fourth Amendment. Thus, we find the trial court did not err by finding that Brandenburg was illegally detained at the time he provided his alleged consent. The state's first assignment of error is overruled.

{¶23} Notwithstanding resolution of the state's first assignment of error, we conclude that the state's second assignment of error has merit; therefore, we remand this decision to the trial court. As noted above, at the time Officer Fannin requested consent to search Brandenburg's vehicle, his legal right to detain Brandenburg had expired. Although Brandenburg was being unlawfully detained, the analysis into the validity of the search is not complete. "Voluntary consent, determined under the totality of the circumstances may validate an otherwise illegal detention and search." *Robinette* at 241.

{¶24} Where an "individual has been unlawfully detained by law enforcement, for his or her consent to be considered an independent act of free will, the totality of the circumstances must clearly demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave." *Id.* at paragraph three of the syllabus, citing *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319 (1983); *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041 (1973). "'[T]he State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of

lawful authority.'" *Id.* at 243, quoting *Royer* at 497.

{¶25} The trial court determined that a "consent to search" analysis was unnecessary because Officer Fannin had no reasonably articulable facts to continue the detention to ask permission to search the vehicle or his wallet. However, as noted above, this is only part of the analysis. The issue of consent was disputed between the parties during the suppression hearing. Both parties agree that the trial court did not address this issue and that remand is appropriate to determine if Brandenburg, notwithstanding the unlawful detention, consented to the search through an independent act of free will. *Robinette*, at paragraph three of the syllabus. *See, e.g., State v. Shaibi*, 12th Dist. Warren No. CA2020-07-038, 2021-Ohio-1352, ¶ 49 (consent to search not freely and voluntarily given); *State v. Mathis*, 8th Dist. Cuyahoga No. 107986, 2019-Ohio-4887, ¶ 39 (question of whether consent to a search was voluntary or the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances). Accordingly, we sustain the state's second assignment of error. We remand this matter to this trial court to determine whether Brandenburg provided consent to search his vehicle consistent with the supreme court's decision in *Robinette.*

{¶26} Judgment affirmed in part, reversed in part, and remanded.

M. POWELL, P.J., and BYRNE, J., concur.