[Cite as *State v. Smith*, 2022-Ohio-2383.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-11-020 |
| | : | O P I N I O N |
| - vs - | | 7/11/2022 |
| | : | |
| NATHAN C. SMITH, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI20200084


Nicholas A. Adkins, Madison County Prosecuting Attorney, and Rachel M. Price, Assistant Prosecuting Attorney, for appellee.

The Law Office of Scott Culbert, LLC, and Scott W. Culbert, for appellant.


**S. POWELL, J.**

{¶ 1}  Appellant, Nathan C. Smith, appeals from his conviction in the Madison County Court of Common Pleas after he pled no contest to one count of fifth-degree felony possession of cocaine.  For the reasons outlined below, we affirm Smith's conviction.

**Facts and Procedural History**

{¶ 2}  On July 9, 2020, a Madison County Grand Jury issued an indictment charging Smith with one count of fifth-degree felony possession of cocaine in violation of R.C.

2925.11(A). The charge arose following a traffic stop of Smith's vehicle by West Jefferson Police Sergeant Josh Jacob on the evening of February 13, 2020. The record indicates Sergeant Jacob initiated this traffic stop based on his belief that Smith was not properly displaying a temporary license placard in plain view from the rear of his vehicle as required by the now former R.C. 4503.21(A)(3). Pursuant to that statute:

> No person to whom a temporary license placard or windshield sticker has been issued for the use of a motor vehicle under section 4503.182 of the Revised Code, and no operator of that motor vehicle, shall fail to display the temporary license placard in plain view from the rear of the vehicle either in the rear window or on an external rear surface of the motor vehicle, or fail to display the windshield sticker in plain view on the rear window of the motor vehicle. No temporary license placard or windshield sticker shall be covered by any material that obstructs its visibility.

{¶ 3} "The intent of the law is to require that license plates be visible to law enforcement personnel and others who may have reason to note the number for identification purposes." *State v. Anderson*, 11th Dist. Lake No. 2017-L-127, 2018-Ohio-2455, ¶ 18, citing *State v. Durfee*, 11th Dist. Lake No. 96-L-198, 1998 Ohio App. LEXIS 865, *8 (Mar. 6, 1998). Because of this, the definition of "plain view" as used in that statute contemplates "actually being able to read the letters and numbers" on the temporary license placard being displayed from the rear of one's vehicle. *See Wilmington v. Connor*, 144 Ohio App.3d 735, 739 (12th Dist.2001) ("[t]he definition of 'plain view' contemplates actually being able to read the letters and numbers on the license plate"), citing *State v. Hanna*, 6th Dist. Williams No. WM-99-016, 2000 Ohio App. LEXIS 879, *7 (Mar. 10, 2000).

{¶ 4} On July 27, 2020, Smith entered a not guilty plea to the above-named fifth-degree felony offense. After Smith entered his not guilty plea, the trial court scheduled the matter for a jury trial to take place on September 22, 2020. Upon scheduling the matter for trial, the trial court then released Smith on his own recognizance. Approximately three

weeks later, on August 19, 2020, Smith filed a motion to suppress. In support of his motion, Smith alleged, in pertinent part, the following:

> On the evening of February 13, 2020, [Smith] was operating his motor vehicle in complete and total compliance with the traffic laws of the State of Ohio. Without regard to his complete and total compliance with the law, [Sergeant Jacob] decided to stop [Smith] due to his temporary tag displayed on the rear of his truck.
>
> * * *
>
> [Smith] had his temporary tag in full display taped to the rear window, as he should have, according to the law of the State of Ohio. [Sergeant Jacob] had no probable cause or even reasonable suspicion to stop [Smith] at all! [Sergeant Jacob] had no probable cause to pull [Smith] out of his truck. [Sergeant Jacob] had no right to interrogate [Smith].

Therefore, according to Smith, because the initial stop of his vehicle was not constitutionally sound, it was necessary for the trial court to "suppress the fruits of his unconstitutional traffic stop."

{¶ 5} On September 11, 2020, the trial court held a hearing on Smith's motion to suppress. At the start of this hearing, the trial court asked Smith's trial counsel if the arguments raised within Smith's motion could be "adequately encapsulate[d]" by stating "the stop itself was unconstitutional," which led to "an illegal arrest" of Smith, and that "any evidence that was gained" after Smith's arrest was "fruit of the poisonous tree." Smith's trial counsel responded, "It does, Your Honor." The trial court then asked the state to call its first and, ultimately, only witness to the stand. This witness was Sergeant Jacob. The following is a summary of Sergeant Jacob's testimony elicited at that hearing.

{¶ 6} Sergeant Jacob testified he was on duty and operating his marked cruiser within the Village of West Jefferson, Madison County, Ohio at approximately 11:15 p.m. on the night of February 13, 2020. Sergeant Jacob testified it was at this time when he came up behind a white Chevy SUV that did not have a license plate displayed on the vehicle's

rear end. Because of this, Sergeant Jacob testified that he maneuvered his cruiser "really close" behind the vehicle at a distance of approximately 20 feet "or less" to see if the vehicle was instead displaying a temporary license placard, i.e., a temporary tag. Sergeant Jacob testified it was from this close distance where he first noticed what appeared to be "a brown rectangle piece of maybe cardboard" taped to the right side of the vehicle's rear window.[1] Sergeant Jacob testified, however, he did not know what the brown piece of cardboard was because (1) it did not look anything like the temporary tags issued by the state of Ohio, and because (2) he could not "see any letters or any distinctive numbers or anything like that" on the piece of cardboard.

{¶ 7} Sergeant Jacob testified he then decided to initiate a traffic stop of the white Chevy SUV for not properly displaying a license plate or temporary tag in violation of R.C. R.C. 4503.21(A). To do this, Sergeant Jacob testified that he first activated his cruiser's overhead, emergency lights. Sergeant Jacob testified it was only then when his cruiser's overhead lights were activated that any of his lights were "high enough to illuminate" the piece of cardboard taped to the vehicle's rear window from a distance "less than" 20 feet. However, even then, the record indicates Sergeant Jacob could not decipher any of the letters or numbers that had been handwritten on that piece of cardboard from that distance. There is no dispute that Smith was the driver of the white Chevy SUV that Sergeant Jacob stopped that night.

{¶ 8} Sergeant Jacob testified when he initiated the stop of Smith's vehicle that Smith was traveling north on Plain City-Georgesville Road towards Plain City, Madison County, Ohio. Sergeant Jacob testified after effectuating the stop of Smith's vehicle that he

---

1. We note that Sergeant Jacob later testified that 20 feet was "just a rough estimate" of how far he was behind the vehicle when he first noticed the piece of cardboard taped to the vehicle's rear window. We also note that Sergeant Jacob testified his cruiser's headlights would not "illuminate" the piece of cardboard from 20-feet given where it was taped to the rear of the vehicle.

approached the vehicle's driver's side door and contacted Smith through the vehicle's driver's side window. Sergeant Jacob testified that upon contacting Smith through the vehicle's driver's side window he explained to Smith the reason for the stop and asked Smith where he was coming from and where he was headed. Sergeant Jacob testified these were the "standard questions" he always asks a vehicle's driver during a routine traffic stop. Sergeant Jacob testified Smith responded and told him that he had just left his mother's house in West Jefferson and was "heading to his house which was off of Hall Road."

{¶ 9} Upon hearing this, Sergeant Jacob testified that he "took note that [Smith] was heading in the wrong direction, like, going out of his way" if Smith was actually driving to his home on Hall Road. Sergeant Jacob testified he also took note of the woman in the vehicle's front passenger seat pretending to be asleep, "all curled up in a ball with her face covered." Sergeant Jacob testified that upon seeing this woman "sleeping" in Smith's vehicle that he asked Smith "who it was" and "what her name was." Sergeant Jacob testified Smith responded and told him the woman's name was "Jessica." Sergeant Jacob testified he then told Smith to "wake" up the woman. Sergeant Jacob testified Smith was "hesitant" to comply with this directive.

{¶ 10} Sergeant Jacob testified Ohio State Highway Patrol Sergeant Hines then arrived at the scene as backup and asked him if everything was okay. Sergeant Jacob testified he responded and asked Sergeant Hines to help him identify the woman pretending to be asleep in Smith's vehicle's front passenger seat. Sergeant Jacob testified he then watched as Sergeant Hines opened the vehicle's passenger side door in order to wake the woman from her pretend sleep. Sergeant Jacob testified after the woman "woke up" that he immediately recognized the woman as Emily Thompson, someone he had attended high school with and whom he knew had an active warrant out for her arrest.

{¶ 11} After seeing it was Thompson in Smith's vehicle, and not a woman named "Jessica" as Smith had claimed, Sergeant Jacob testified that he went back to his cruiser and ran Thompson's name through his cruiser's computer system. Sergeant Jacob testified this search "showed that [Thompson] had active warrants out of Madison County and Franklin County for trafficking in drugs." Sergeant Jacob testified that after confirming Thompson did, in fact, have active warrants for her arrest that he then went back to Smith's vehicle and asked Thompson to get out of the car. Explaining what happened next, Sergeant Jacob testified:

> We asked her to get out of the car. And she grabs on to the center console because she doesn't want to get out. We remove her from the car. I place her in the back of my cruiser. And during this time Sergeant Hines is talking to Mr. Smith. When I walked back up to where Sergeant Hines was talking on the passenger side, he points out the Chore Boy and the broken pens which is indicative of drug usage of crack cocaine, to smoke crack cocaine.[2]

Thereafter, when asked if the "Chore Boy" and broken pens were "clearly visible" from where he and Officer Hines were lawfully standing outside of Smith's vehicle, Sergeant Jacob testified, "Yes."

{¶ 12} Sergeant Jacob testified he then asked Smith to exit the vehicle so that a search of the vehicle could be conducted. Sergeant Jacob testified another officer who had since arrived on the scene, Officer Robert Speakman, then escorted Smith away from the vehicle and back towards his cruiser. Sergeant Jacob testified Officer Speakman then told Smith that he was "going to pat him down for weapons" and asked Smith "if he had anything that was going to poke him, stick him or anything like that * * *." Sergeant Jacob testified Smith responded and told Officer Speakman that "he had a crack pipe" on his person.

---

2. A "Chore Boy" is a brand name of a coarse scouring pad made of steel or cooper wool.

Sergeant Jacob testified the crack pipe was then removed from Smith's person by Officer Speakman.

{¶ 13} Sergeant Jacob testified Officer Speakman then asked Smith "if he had anything else." Sergeant Jacob testified Smith responded and told Officer Speakman that "he had crack cocaine in his pocket also." Upon learning Smith had both a crack pipe and crack cocaine on his person, Sergeant Jacob testified that he read Smith his *Miranda* rights and Officer Speakman placed Smith under arrest for possession of cocaine. Sergeant Jacob testified he did not, however, write Smith a traffic ticket for not properly displaying a temporary tag from the rear of his vehicle. This is because, as Sergeant Jacob testified, Smith was "cooperative and forthcoming" to Officer Speakman when asked about the crack pipe and crack cocaine that Officer Speakman had found on his person.

{¶ 14} Following Sergeant Jacob's testimony, the trial court asked the state if it would be calling any other witnesses. The following exchange then occurred between the trial court, Smith's trial counsel, and the state:

> THE COURT: Who is your next witness?
>
> [THE STATE]: The [s]tate of Ohio calls Officer Robert Speakman to the stand. He is waiting in a conference room.
>
> THE COURT: [Bailiff], wait a minute. Does the [s]tate anticipate that Officer Stevenson was involved in the stop?
>
> [THE STATE]: Officer Speakman, Your Honor –
>
> THE COURT: Speakman, excuse me.
>
> [THE STATE]: -- was involved in the stop. He arrived shortly after Sergeant Jacob effectuated the traffic stop. He was the one who ultimately spoke with Mr. Smith about having any items on him. He actually effectuated the arrest. I just made sure we subpoenaed Mr. Speakman because in reading the suppression motion, I believe it was not only the stop at issue, but also events that stemmed therefrom. But if the only thing at issue is the stop itself, Officer Speakman need not be used.

> THE COURT: [Smith's trial counsel], from my reading of the motion, maybe I missed something, this is focused on the basis for the stop, fair?
>
> [SMITH'S TRIAL COUNSEL]: I have no questions for the other officer, Your Honor.
>
> THE COURT: In light of that statement, [the state], is it necessary to bring in an officer who was not involved in the initial stop?
>
> [THE STATE]: It's not, Your Honor. The [s]tate will rest its case. No further witnesses then.

{¶ 15} Following this exchange, the trial court heard closing arguments from both Smith and the state. Once closing arguments concluded, the trial court advised the parties that it would give them both time to file written memoranda in support of their respective positions prior to the trial court issuing its decision on Smith's motion to suppress. Taking the trial court up on its offer, the state filed its supplemental memorandum with the trial court on September 15, 2020, with Smith filing his supplemental memorandum with the trial court two days later, on September 17, 2020. As relevant here, the first paragraph of Smith's supplemental memorandum stated the following:

> Now comes Nathan C. Smith, through the undersigned counsel, who hereby offers this memorandum of law for the Court's edification and elucidation on the issue of whether the traffic stop in this case violated Mr. Smith's constitutional right to be free from unreasonable seizure of his liberty. As is set forth in this memorandum and as was orally argued at the suppression hearing on September 11, 2020, arresting officer Joshua Jacob had neither probable cause nor a reasonable suspicion to 'stop' Mr. Smith in the first instance.

{¶ 16} On September 18, 2020, the trial court issued a decision denying Smith's motion to suppress. In so doing, the trial court initially stated that "[t]he issue before the Court [was] whether West Jefferson Police Sergeant Josh Jacob had a valid basis to initiate a stop of [Smith's] vehicle." Later on in its decision, and after setting forth its findings of fact, the trial court reiterated that "[t]he issue before the Court [was] whether, under these

- 8 -

circumstances, [Sergeant Jacob] had a reasonable, articulable suspicion or probable cause to initiate a traffic stop." The trial court then went on to explain its rationale for why it found the traffic stop of Smith's vehicle proper. Specifically, the trial court stated:

> The Court finds from the testimony before it that [Sergeant Jacob] was unable to identify the numbers or the letters attached to the brown rectangular shaped object from a distance of twenty feet (20') and therefore [the temporary license placard] was not in plain view [from the rear of Smith's vehicle] for purposes of [R.C. 4503.21(A)(3)]. Therefore, the Court concludes that, under the totality of the circumstances, [Sergeant Jacob] had reasonable articulable suspicion to believe that [Smith] was not properly displaying a temporary license placard and was justified in making the stop.

{¶ 17} On October 30, 2020, the trial court held a change of plea hearing. At this hearing, Smith entered a no contest plea to the indicted charge of fifth-degree felony possession of cocaine. Following the necessary Crim.R. 11 plea colloquy, the trial court accepted Smith's no contest plea upon finding Smith's plea was knowingly, intelligently, and voluntarily entered. Once the change of plea hearing concluded, the trial court then again released Smith on his own recognizance with instructions to appear before the trial court for sentencing on December 1, 2020. Smith, however, did not appear for sentencing and a warrant was issued for Smith's arrest.

{¶ 18} Approximately 11 months later, on September 28, 2021, the trial court issued an entry noting that Smith's sentencing would go forward on October 15, 2021 now that Smith was in the custody of the Madison County Sheriff's Office. The record indicates the trial court's sentencing took place as scheduled on October 15, 2021. At sentencing, the trial court sentenced Smith to serve seven months in prison, less 37 days of jail-time credit. The trial court also ordered Smith to pay court costs and notified Smith that he would be subject to an optional two-year postrelease control term upon his release from prison. Smith

filed a timely notice of appeal from his possession of cocaine conviction on November 15, 2021.

{¶ 19} Smith's appeal now properly before this court for decision, Smith raises two assignments of error for review challenging the trial court's decision denying his motion to suppress.

**Motion to Suppress Standard of Review**

{¶ 20} When reviewing a trial court's decision denying a motion to suppress, "this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Stout*, 12th Dist. Butler No. CA2020-08-085, 2021-Ohio-1125, ¶ 11; *State v. Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, ¶ 16 ("[a]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence"). This court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12. This requires this court to "decide the legal questions independently, without deference to the trial court's decision." *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, ¶ 14; *State v. Tidwell*, 165 Ohio St.3d 57, 2021-Ohio-2072, ¶ 18 ("[t]he appellate court must decide questions of law de novo, without deference to the lower court's legal conclusions").

**Assignment of Error No. 1:**

{¶ 21} THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND AN ABUSE OF DISCRETION BY UNREASONABLY NARROWING THE SCOPE OF APPELLANT'S MOTION TO SUPPRESS TO CHALLENGE ONLY THE LAWFULNESS OF THE TRAFFIC STOP ITSELF AND FAILING TO CONSIDER APPELLANT'S TIMELY CONSTITUTIONAL CHALLENGE TO THE PROLONGED DETENTION AND ARREST THAT FOLLOWED.

{¶ 22} In his first assignment of error, Smith argues the trial court erred by "unreasonably narrowing" the scope of his motion to suppress by finding the only issue raised within his motion was whether Sergeant Jacob had a valid basis to initiate a traffic stop of his vehicle. However, after a simple review of the record, the question of whether Sergeant Jacob was justified in initiating a traffic stop of Smith's vehicle was, in fact, the only issue Smith ever raised to the trial court. Smith admitted as much at the suppression hearing when his trial counsel failed to correct the trial court when his trial counsel was asked whether it was "fair" to say Smith's motion was "focused on the basis for the stop" and not anything that might have occurred after the stop of Smith's vehicle was effectuated.

{¶ 23} This is in addition to Smith informing the trial court that it had "no questions for the other officer, Your Honor," when the trial court asked Smith's trial counsel if it was necessary for the state to call Officer Speakman to the stand to testify about the events that occurred after Sergeant Jacob initiated a traffic stop of Smith's vehicle. That is to say nothing of the fact that Smith's supplemental memorandum filed with the trial court argued only that "that arresting officer Joshua Jacob had neither probable cause nor a reasonable suspicion to 'stop' Mr. Smith in the first instance." For Smith to now claim he was arguing against something more is a clear attempt to pull the wool over this court's eyes and have us believe something that is simply not true. This court will not be so easily led astray.

{¶ 24} In so holding, we find it necessary to note our agreement with the trial court's decision finding Sergeant Jacob had a reasonable, articulable suspicion to initiate a traffic stop of Smith's vehicle based on his belief that Smith was not properly displaying a temporary license placard in plain view from the rear of his vehicle as required by the now former R.C. 4503.21(A)(3). This is because, as the trial court found, Sergeant Jacob could not read the numbers and letters written on the piece of cardboard taped to the back of Smith's vehicle from a distance of approximately 20 feet even when the piece of cardboard

was illuminated by his cruiser's overhead, emergency lights. *See, e.g., State v. Waldron*, 5th Dist. Delaware No. 18CAC020018, 2019-Ohio-477, ¶ 5, 16 (officer had reasonable, articulable suspicion to initiate a traffic stop of appellant's vehicle believing a violation of R.C. 4503.21[A][3] had occurred where the temporary license placard displayed on the rear of appellant's vehicle was not in "plain view" because the officer "could not identify the tag, much less read it, until he was very close to it" with the help of "the illumination from the cruiser"); *see also State v. Hill*, 2d Dist. Montgomery No. 28509, 2020-Ohio-3057, ¶ 23 (appellant's conviction for violating R.C. 4503.21[A][3] was supported by sufficient evidence where officer "was unable to read the license plate due to the tinted cover, even when he was 10 to 15 feet away, and it was only after he stopped the vehicle that he was able to read the license plate").

{¶ 25} This suspicion did not dissipate simply because Sergeant Jacob could read the handwritten letters and numbers on the piece of cardboard once he initiated a stop of Smith's vehicle, exited his cruiser, and approached Smith's vehicle on foot. *See State v. Phillips*, 2d Dist. Montgomery No. 22918, 2009-Ohio-3519, ¶ 10 (officer's reasonable, articulable suspicion that appellant was violating R.C. 4503.21 where the officer could not read appellant's temporary license plate number when viewed from "no more than three car lengths away in his patrol car" did not "abate simply because [the officer] then approached [appellant's] vehicle on foot and ascertained the plate number"). This is because, despite Smith's claims that Sergeant Jacob was eventually able to read the numbers and letters written on that piece of cardboard, it does not mean violation of R.C. 4503.21(A)(3) did not occur. To the contrary, the record fully supports a finding Smith was in violation of that statute when considering, among other things, Sergeant Jacob did not know what the piece of cardboard taped to the rear window of Smith's vehicle was given its dissimilar appearance to the temporary license placards usually issued by the state of Ohio.

{¶ 26} Under these circumstances, Sergeant Jacob was not required to just turn Smith loose once he got within a few feet of Smith's vehicle and then could, in fact, read the numbers and letters handwritten on the piece of cardboard taped to the vehicle's rear window. To hold otherwise, particularly under the facts of this case, would have allowed a potentially dangerous driver to continue operating a vehicle without a license plate or proper temporary tag visible for others to plainly see should law enforcement or other drivers need to note the number for identification purposes of Smith's vehicle. Therefore, finding no merit to any of the arguments advanced by Smith herein, Smith's first assignment of error lacks merit and is overruled.

**Assignment of Error No. 2:**

{¶ 27} THE TRIAL COURT COMMITTED PREJUDICIAL AND PLAIN ERROR IN OVERRULING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE OFFICER'S REASONABLE SUSPICION OF A VIOLATION OF R.C. §4503.21 WAS DISPELLED AS SOON AS HE OBSERVED A VALID TEMPORARY TAG POSTED ON THE REAR WINDSHIELD; THEREFORE, THE FAILURE OF THE OFFICER TO TERMINATE THE DETENTION AND SEND APPELLANT ON HIS WAY AFTER A BRIEF COURTESY EXPLANATION UNREASONABLY PROLONGED THE TRAFFIC STOP IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 14 OF THE OHIO CONSTITUTION.

{¶ 28} In his second assignment of error, Smith argues the trial court erred by denying his motion to suppress because he was subject to a "prolonged detention" of his person that was not based on any reasonable, articulable suspicion that he was engaged in any criminal activity. However, as noted above, Smith did not raise this issue with the

trial court. The only issue Smith raised with the trial court was whether the initial stop of his vehicle by Sergeant Jacob was constitutionally sound.

**{¶ 29}** "A first principle of appellate jurisdiction is that a party ordinarily may not present an argument on appeal that it failed to raise below." *State v. Wintermeyer*, 158 Ohio St.3d 513, 2019-Ohio-5156, ¶ 10, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997). This court has consistently applied this principle by finding "a party cannot raise new issues or legal theories for the first time on appeal because such issues or theories are deemed waived." *State v. Keating*, 12th Dist. Clermont No. CA2019-08-064, 2020-Ohio-2770, ¶ 27. This court has, in fact, found such principle to be well established. *State v. Kirk*, 12th Dist. Clermont No. CA2019-07-053, 2020-Ohio-323, ¶ 25 ("[i]t is well established that a party cannot raise new issues or legal theories for the first time on appeal because such issues or theories are deemed waived"). "This waiver 'applies to arguments not asserted either in a written motion to suppress or at the suppression hearing.'" *Keating* quoting *State v. Walker*, 1st Dist. Hamilton No. C-150757, 2017-Ohio-9255, ¶ 26.

**{¶ 30}** Therefore, because Smith did not raise the issue below, the question of whether Smith was the subject of a prolonged detention of his person that was not based on any reasonable, articulable suspicion that he was engaged in any criminal activity has been waived and is not properly before this court for review.[3] *See, e.g., State v. Turner*, 12th Dist. Clermont No. CA2018-11-082, 2021-Ohio-541, ¶ 11-14 (state's argument that the traffic stop of appellee's vehicle was lawful, even in the absence of probable cause or

---

3. We note that, even if this issue was not waived, it is well established that "the detention of a stopped motorist 'may continue beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop.'" *State v. Brandenburg*, 12th Dist. Clermont No. CA2020-09-055, 2021-Ohio-2875, ¶ 16, quoting *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 15. Based on the facts of this case, there can be no doubt that Sergeant Jacob encountered at least one, if not more, additional facts that gave rise to such reasonable, articulable suspicion. This includes, among other things, Smith claiming he was driving home when he was in fact driving in the opposite direction from where he lived.

reasonable articulable suspicion, due to the officer's reasonable mistake of law was waived and was not properly before this court for review because the state asserted this "new justification for the validity of the traffic stop for the first time on appeal"); *State v. Blatchford*, 12th Dist. Preble No. CA2015-12-023, 2016-Ohio-8456, ¶ 36 ("[b]y failing to raise the issue of the canine's reliability and training in his motion to suppress or at the suppression hearing, appellant waived the issue and we need not consider the issue on appeal"). Accordingly, Smith's second assignment of error also lacks merit and is overruled.

## Conclusion

{¶ 31} For the reasons outlined above, and finding no merit to any of the arguments raised by Smith within either of his two assignments of error, Smith's two assignments of error lack merit and are overruled.

{¶ 32} Judgment affirmed.

PIPER, P.J., and HENDRICKSON, J., concur.