[Cite as *State v. Dowdell*, 2025-Ohio-5474.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

BENJAMIN DOWDELL, JR.,

        Defendant-Appellant.

CASE NO. 2025-L-062

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2024 CR 001252

---

## OPINION AND JUDGMENT ENTRY

Decided: December 8, 2025
Judgment: Affirmed

---

*Charles E. Coulson*, Lake County Prosecutor, and *Jennifer A. McGee*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Vanessa R. Clapp*, Lake County Public Defender, and *Paul J. Lubonovic*, Assistant Public Defender, 100 West Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

SCOTT LYNCH, J.

{¶1} Defendant-appellant, Benjamin Dowdell, Jr., appeals the denial of his Motion to Suppress in the Lake County Court of Common Pleas. For the following reasons, we affirm the decision of the court below.

***Procedural History***

{¶2} On December 20, 2024, Dowdell was charged with one count of Aggravated Possession of Drugs and two counts of Possession of Cocaine.

{¶3} Dowdell filed a Motion to Suppress which was denied on March 4, 2025.

{¶4}    Dowdell subsequently pled "no contest" to Aggravated Possession of Drugs and one count of Possession of Cocaine.

{¶5}    On May 1, 2025, the trial court sentenced Dowdell to concurrent prison terms of six months for each count, stayed pending appeal.

## Assignment of Error

{¶6}    On appeal, Dowdell raises the following assignment of error: "The trial court erred when it denied defendant-appellant's Motion to Suppress."

## Standard of Review

{¶7}    "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.* "[A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* "Accepting these facts as true, the appellate court must then independently [*i.e.*, *de novo*] determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

## Findings of Fact

{¶8}    In denying Dowdell's Motion to Suppress, the trial court made the following factual findings:

> On October 15, 2024, Patrolman Dallas McCloud (an acting sergeant at the time) was on patrol in the City of Painesville. At approximately 12:56 a.m., he encountered a vehicle being driven without a visible rear license plate. Patrolman McCloud followed the vehicle for approximately 200 yards before conducting a traffic stop for the lack of a rear license plate. When Patrolman McCloud stopped the vehicle, he was one to one-half car lengths behind the vehicle. It was only when Patrolman McCloud shined his vehicle spotlight on

the vehicle that he observed the outline of what appeared to be a temporary placard in the top left corner of the rear windshield. He was still unable to read the characters on the placard.

Patrolman McCloud could only read the characters when he was approximately two feet from the placard and standing near the rear tire. He had to look straight down into the windshield to read the placard. Patrolman McCloud admitted that the placard was flush with the windshield, was securely taped to the windshield, and had no physical obstructions.

Patrolman McCloud approached the driver and observed four additional occupants. He recognized a female and Defendant, who was seated in the rear middle seat. Knowing that the female and Defendant were drug users, Patrolman McCloud requested a drug canine to conduct a search of the vehicle. Officers discovered narcotics on Defendant's person, resulting in his arrest. He was indicted on three counts of Possession of Drugs, all felonies of the fifth degree. The driver was issued a citation for Display of License Plates under Painesville Ordinance 336.09.

***Patrolman McCloud had Probable Cause to Issue a Citation to the Driver of the Vehicle in which Dowdell was a Passenger for Violating Painesville Cod.Ord. 336.09(a)(3)***

{¶9} Patrolman McCloud initiated the traffic stop based on a violation of Painesville Cod.Ord. 336.09(a)(3) – substantially identical to R.C. 4503.21(A)(3) – which provides: "No person to whom a temporary motor vehicle license registration has been issued for the use of a motor vehicle under R.C. § 4503.182, and no operator of that motor vehicle, shall fail to display the temporary motor vehicle license registration in plain view from the rear of the vehicle either in the rear window or on an external rear surface of the motor vehicle." The trial court interpreted the words "plain view" to mean "'actually being able to read the letters and numbers' on the temporary license placard being displayed from the rear of one's vehicle." (Citation omitted.) *State v. Smith*, 2022-Ohio-2383, ¶ 3 (12th Dist.). Dowdell maintains that neither the ordinance nor the statute requires that the temporary registration be legible from any particular distance. Because "McCloud

Case No. 2025-L-062

could in fact read the numbers and letters on the temporary registration, without obstruction," the fact "[t]hat he had to get out of his cruiser to do so is irrelevant to the statutory requirement." Brief of Defendant-Appellant at 12. "Therefore, as a matter of law, there was no violation of the ordinance." *Id.*

{¶10} Dowdell acknowledges that the initial stop was valid: "Because [Patrolman McCloud] could not see a license plate and could not easily see the temporary registration from his cruiser, he had an objectively reasonable basis to conclude that the [vehicle] did not have a valid temporary tag" and "could initiate a stop." *Id.* at 14. Further, "[h]e was permitted [under *State v. Dunlap*, 2024-Ohio-4821] to approach the driver to ask for identification and to explain the reason for the stop." *Id.* However, Dowdell asserts, he could do no more than that. "Once he determined that temporary registration was valid, flush against the window, and unobstructed, … McCloud lacked the probable cause or reasonable suspicion necessary to keep the [vehicle] detained while he wrote a ticket and waited for the K9 to arrive." *Id.*

{¶11} We disagree that Patrolman McCloud lacked probable cause to issue a citation merely because the registration was visible at a distance of two feet and when he was looking "straight down." Dowdell's interpretation of "plain view" is far from being the settled law of this appellate district or of the state. In *State v. Anderson*, 2018-Ohio-2455 (11th Dist.), this court determined that the registration was not in plain view "[s]ince [the officer] could only see the license plate number after he approached the vehicle on foot following the stop." *Id.* at ¶ 18. It could be argued that *Anderson* is distinguishable from the present case because the plate in *Anderson* was not flush or securely fastened to the rear window. Rather, it was "propped up in the front windshield, was 'tilted back' and

Case No. 2025-L-062

'wasn't straight up and down where it was visible.'" *Id.* at ¶ 17. Nevertheless, the fact that the issue of whether the ordinance was violated is debatable validates the propriety of issuing a citation.

{¶12} The law does not require a confirmed violation of a statute or ordinance in order for probable cause to exist for issuing a citation. Rather, as long as it was objectively reasonable for the officer to believe that the ordinance was violated, probable cause existed to issue a citation and, therefore, to detain the driver and occupants of the vehicle while it was being issued. The Supreme Court of Ohio explained the matter thus:

> The trial court correctly concluded that the fact that appellee could not be convicted of failure to obey a traffic-control device is not determinative of whether the officer acted reasonably in stopping and citing him for that offense. Probable cause does not require the officer to correctly predict that a conviction will result. We agree with the sentiment expressed in a federal case involving an officer who had stopped a vehicle based on the mistaken belief that the windows were tinted darker than the law permitted. The court observed that the officer "was not taking the bar exam. The issue is not how well [the officer] understood California's window tinting laws, but whether he had objective, probable cause to believe that these windows were, in fact, in violation." *United States v. Wallace* (C.A.9, 2000), 213 F.3d 1216, 1220.

*Bowling Green v. Godwin*, 2006-Ohio-3563, ¶ 15.

{¶13} Dowdell further argues that Patrolman McCloud's belief that the ordinance was violated under the circumstances was not reasonable in light of the plain and unambiguous language of the ordinance. *See State v. Ware*, 2019-Ohio-3885, ¶ 42 (4th Dist.) ("if a statute is unambiguous in the scope of its application, it is not objectively reasonable for an officer to charge an individual with a violation of that statute within the context of the Fourth Amendment").

Case No. 2025-L-062

{¶14} As noted above, there is appellate authority contrary to Dowdell's interpretation. In another Eleventh District case, *State v. Walker*, 2012-Ohio-3303 (11th Dist.), a violation of R.C. 4503.021(A) was found in circumstances similar to this case. In *Walker*, the officer did not initially observe a license plate on the appellant's vehicle. After following the vehicle, the officer could discern "something in appellant's rear window, but he could not tell if it was a license plate." After stopping and approaching the vehicle, the officer "was only able to read the numbers on the tag when he was standing next to the rear door on the driver's side, standing over and looking down at the tag." *Id.* at ¶ 31. Based on these circumstances, this court held that the officer was justified in detaining the appellant to issue a citation. *Id.* There is similar authority from other appellate districts. *See Smith*, 2022-Ohio-2383, at ¶ 3 (12th Dist.) ("the definition of 'plain view' as used in that statute contemplates 'actually being able to read the letters and numbers' on the temporary license placard being displayed from the rear of one's vehicle"); *State v. Colton*, 2005-Ohio-4494, ¶ 16 (2d Dist.) ("this was still a violation of R.C. 4503.21(A) because the angle of the tag and the glare from the window prevented the tag from being visible from behind").

{¶15} Dowdell criticizes these decisions for considering the purported legislative intent behind the statute rather than adhering to what is purported to be its plain meaning. It is a question we need not resolve. Nor was it a question that Patrolman McCloud needed to resolve before deciding to issue the driver of the vehicle a citation on October 15, 2024. Whether legally correct or not, McCloud's decision to issue a citation for the violation of the Painesville ordinance was not unreasonable under the circumstances of the stop or the prevailing law of this district.

{¶16} The assignment of error is without merit.

{¶17} For the foregoing reasons, we affirm the denial of Dowdell's Motion to Suppress. Costs to be taxed against the appellant.


ROBERT J. PATTON, P.J.,

MATT LYNCH, J.,

concur.

Case No. 2025-L-062

# JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, the assignment of error is without merit. The order of this court is that the judgment of the Lake County Court of Common Pleas is affirmed.

Costs to be taxed against the appellant.

_____
JUDGE SCOTT LYNCH

_____
PRESIDING JUDGE ROBERT J. PATTON,
concurs

_____
JUDGE MATT LYNCH,
concurs

| **THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY** |
| --- |
| A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure. |

Case No. 2025-L-062