[Cite as *State v. Brefford*, 2025-Ohio-4436.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 23AP-644 |
| | | (C.P.C. No. 23CR-2226) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Deondre D. Brefford, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 23, 2025

**On brief:** [*Shayla D. Favor*], Prosecuting Attorney, and *Paula M. Sawyers*, for appellee. **Argued:** *Paula M. Sawyers*.

**On brief:** *L. Scott Petroff*, for appellant. **Argued:** *L. Scott Petroff*.

APPEAL from the Franklin County Court of Common Pleas

EDELSTEIN, J.

{¶ 1} Following a jury trial, defendant-appellant, Deondre D. Brefford, was found guilty of crimes stemming from an altercation with law enforcement during an investigatory stop. Mr. Brefford appeals from the October 19, 2023 judgment of conviction entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm.

**I. FACTS AND PROCEDURAL BACKGROUND**

{¶ 2} On July 29, 2022, a Franklin County Grand Jury returned a five-count indictment under Franklin C.P. No. 22CR-3372 charging Mr. Brefford with having a weapon while under disability, assault, resisting arrest, carrying a concealed weapon, and

obstructing official business. Firearm specifications were included with the assault, resisting arrest, and obstruction counts.

{¶ 3}   These offenses pertained to law enforcement's July 21, 2022 encounter with Mr. Brefford while he was operating a bicycle.  Sergeant Matthew Dover of the Columbus Police Department claimed to have smelled a strong odor of raw marijuana coming from Mr. Brefford's person during the encounter.   Although Mr. Brefford denied having marijuana multiple times, circumstances suggested to Sergeant Dover that criminal activity may be afoot, as described more below, so he decided to detain Mr. Brefford to investigate. A physical altercation between Mr. Brefford and Sergeant Dover followed, during which a firearm fell from Mr. Brefford's person onto the ground.  Sergeant Dover requested backup from his partner, Officer D.S., and both claimed Mr. Brefford attempted to regain possession of the firearm while struggling with officers.  After Mr. Brefford was detained, officers recovered marijuana and cocaine from the backpack he was wearing.

{¶ 4}   On April 6, 2023, Mr. Brefford entered into a negotiated plea agreement with plaintiff-appellee, the State of Ohio.  In exchange for the state's dismissal of the assault, carrying a concealed weapon, and obstruction counts, Mr. Brefford entered a counseled plea of guilty to having a weapon while under disability and resisting arrest.  However, on April 19, 2023, prior to sentencing, Mr. Brefford moved to withdraw his guilty plea.  On May 2, 2023, the trial court entered judgment granting Mr. Brefford's motion to withdraw the plea entered in case No. 22CR-3372.

{¶ 5}   The next day, a Franklin County Grand Jury returned a seven-count indictment under Franklin C.P. No. 23CR-2226 charging Mr. Brefford with aggravated robbery, assault, resisting arrest, obstructing official business, cocaine possession, carrying a concealed weapon, and having a weapon while under disability.  Firearm specifications were charged with the assault, resisting arrest, obstruction, and drug possession counts. These offenses all stemmed from the same July 21, 2022 incident that was the subject of Mr. Brefford's indictment in the 2022 case.

{¶ 6}   On May 19, 2023, Mr. Brefford moved to dismiss the 2023 case in its entirety, or, in the alternative, to suppress all evidence obtained in violation of the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution.  After conducting a hearing on Mr. Brefford's motion, the trial court issued a

written decision on June 14, 2023 denying the motion. Mr. Brefford challenges that decision in his first assignment of error, as discussed below.

{¶ 7} Trial commenced on September 6, 2023. Prior to trial, the state dismissed the resisting arrest with firearm specification and having a weapon while under disability counts. At the request of the state and for good cause shown, the trial court subsequently entered a nolle prosequi on these two counts. Following the presentation of evidence, the jury returned a verdict finding Mr. Brefford guilty of aggravated robbery, assault with a three-year firearm specification, obstructing official business with a three-year firearm specification, possession of cocaine with a one-year firearm specification, and carrying a concealed weapon.

{¶ 8} At the October 11, 2023 sentencing hearing, the trial court imposed an aggregate prison sentence of 10 to 11 and one-half years. Mr. Brefford's convictions and sentence were memorialized in the court's October 19, 2023 judgment entry.

{¶ 9} Mr. Brefford now appeals and raises the following four assignments of error for our review:

> [I.] THE COURT ERRED TO THE PREJUDICE OF [MR. BREFFORD] WHEN IT DENIED HIS MOTION TO SUPPRESS EVIDENCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS [TO] THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION.
>
> [II.] SENTENCING [MR. BREFFORD] TO MULTIPLE CONSECUTIVE PRISON TERMS FOR GUN SPECIFICATIONS WHEN THOSE COUNTS WERE PART OF THE SAME ACT AND THE EXCEPTION DOES NOT APPLY WAS A VIOLATION OF R.C. 2941.25, R.C. 2929.14, AND [MR. BREFFORD'S] UNITED STATES AND OHIO CONSTITUTIONAL RIGHT TO BE FREE FROM DOUBLE JEOPARDY.
>
> [III.] [MR. BREFFORD] SUFFERED PREJUDICE DUE TO THE INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF HIS RIGHT TO DUE PROCESS AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION WHEN TRIAL COUNSEL FAILED TO RAISE ANY SPEEDY TRIAL ISSUES AND AGREED TO AN ERRONEOUS JURY INSTRUCTION.

[IV.] THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND BASED UPON INSUFFICIENT EVIDENCE IN VIOLATION OF [MR. BREFFORD'S] RIGHT TO DUE PROCESS AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

{¶ 10} Mr. Brefford attributes error to a wide range of legal matters, so the relevant facts are summarized within our analysis of each assignment of error below.

## II. ANALYSIS

{¶ 11} For ease of discussion and in the interest of clarity, we address Mr. Brefford's four assignments of error out of order. First, we consider his challenge to the trial court's denial of his pretrial motion to suppress (first assignment of error). Then we turn to his ineffective assistance of counsel claims involving statutory speedy trial and jury instructions on the carrying a concealed weapon count (third assignment of error). We next review the sufficiency and weight of the evidence supporting Mr. Brefford's convictions for aggravated robbery, assault with its corresponding firearm specification, and carrying a concealed weapon (fourth assignment of error). Finally, we address the propriety of the court's decision to impose consecutive prison terms on all three firearm specification sentencing enhancements (second assignment of error).

### A. First Assignment of Error: Motion to Suppress

{¶ 12} In his first assignment of error, Mr. Brefford challenges the trial court's denial of his motion to suppress evidence obtained from his warrantless seizure. He argues the state failed to demonstrate that the traffic stop of his bicycle and continued seizure following the initial stop were valid. For the following reasons, we disagree.

### 1. Standard of Review

{¶ 13} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Banks-Harvey*, 2018-Ohio-201, ¶ 14, citing *State v. Burnside*, 2003-Ohio-5372, ¶ 8. Thus, an appellate court's standard of review of a trial court's decision denying a motion to suppress is two-fold. *See, e.g., State v. Pilgrim*, 2009-Ohio-5357, ¶ 13 (10th Dist.), citing *State v. Reedy*, 2006-Ohio-1212, ¶ 5 (10th Dist.), citing *State v. Lloyd*, 126 Ohio App.3d 95, 100-01 (7th Dist. 1998).

{¶ 14} In ruling on a motion to suppress, the trial court first assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of

witnesses.  *See, e.g., State v. Leak*, 2016-Ohio-154, ¶ 12, citing *Burnside* at ¶ 8, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992).  Thus, on appeal, we must " 'accept the trial court's findings of fact if they are supported by competent, credible evidence.' "  *Id.*, quoting *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982).

{¶ 15}  With respect to the trial court's conclusions of law, however, our standard of review is de novo.  *See, e.g., Banks-Harvey* at ¶ 14, citing *Burnside* at ¶ 8; *State v. Turner*, 2020-Ohio-6773, ¶ 14.  *See also Pilgrim* at ¶ 13.  We are tasked with independently determining whether the facts satisfy the applicable legal standard.  *See id.*

### 2.  Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution

{¶ 16}  The Fourth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, protects people against unreasonable searches and seizures.  *See, e.g., Banks-Harvey*, 2018-Ohio-201, at ¶ 17, citing *United States v. Ross*, 456 U.S. 798, 825 (1982).  It is a restraint on the government and, more narrowly here, law enforcement.  *See id.*  The Supreme Court of Ohio has held that in felony cases, Article I, Section 14 of the Ohio Constitution provides the same protection as the Fourth Amendment to the United States Constitution.[1]  *Banks-Harvey* at ¶ 16, citing *State v. Jones*, 2015-Ohio-483, ¶ 12.

{¶ 17}  To safeguard the rights protected in the Fourth Amendment, the United States Supreme Court has created the exclusionary rule, which precludes the use in a criminal proceeding of evidence obtained in violation of the Fourth Amendment.  *Davis v. United States*, 564 U.S. 229, 236 (2011), citing *Elkins v. United States*, 364 U.S. 206, 217 (1960).  Evidence obtained as the result of an unconstitutional stop, arrest, or search must

---

[1] Although the protections afforded by Article I, Section 14 of the Ohio Constitution have historically been construed as co-extensive with the protections of the Fourth Amendment to the United States Constitution, it is well-established that states may "rely on their own constitutions to provide broader protection for individual rights, independent of protections afforded by the United States Constitution." *State v. Robinette*, 80 Ohio St.3d 234, 238 (1997), citing *Arnold v. Cleveland*, 67 Ohio St.3d 35 (1993). And, in certain circumstances, the Supreme Court has construed Article I, Section 14 of the Ohio Constitution as providing Ohio citizens with greater protections than the Fourth Amendment to the United States Constitution. *See, e.g., State v. Brown*, 2015-Ohio-2438, ¶ 23 (holding that Article I, Section 14 of the Ohio Constitution provides greater protection than the Fourth Amendment to the United States Constitution against searches and seizures made by members of law enforcement who lack authority to make an arrest); *State v. Brown*, 2003-Ohio-3931, ¶ 22, 25 (holding that Article I, Section 14 of the Ohio Constitution provides greater protection than the Fourth Amendment to the United States Constitution against warrantless arrests for minor misdemeanors). *See also State v. Dibble*, 2020-Ohio-546, ¶ 60, fn. 3 (Donnelly, J., dissenting). *See also id.* at ¶ 14, fn. 1 (DeWine, J., writing for the majority).

be excluded at trial as "fruit of the poisonous tree." *See, e.g., Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963); *State v. Farris*, 2006-Ohio-3255, ¶ 49; *Banks-Harvey* at ¶ 25.

{¶ 18} When a defendant files a motion to suppress on the grounds that his Fourth Amendment rights have been violated by an unreasonable search or seizure, the defendant has the initial burden to demonstrate the seizure or search was conducted without a valid warrant and to articulate the legal and factual basis for suppression. *See Xenia v. Wallace*, 37 Ohio St.3d 216, 218 (1988). Once the defendant satisfies the initial burden, the state carries the burden of showing, by at least a preponderance of the evidence, that the search and/or seizure fits within one of the defined exceptions to the warrant requirement. *See, e.g., id.*, citing *State v. Kessler*, 53 Ohio St.2d 204, 207 (1978); *Columbus v. Ellyson*, 2006-Ohio-2075, ¶ 5 (10th Dist.), citing *Athens v. Wolf*, 38 Ohio St.2d 237, 241 (1974); *State v. Brandenburg*, 2021-Ohio-2875, ¶ 13 (12th Dist.).

{¶ 19} "For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant." *State v. Moore*, 90 Ohio St.3d 47, 49 (2000). A seizure or search is unreasonable when police lack a valid warrant and no exception to the warrant requirement applies. *See, e.g., State v. Jackson*, 2022-Ohio-4365, ¶ 10, citing *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006).

### 3. Analysis

{¶ 20} In his motion to suppress evidence obtained from the warrantless seizure, Mr. Brefford contended that Sergeant Dover did not have probable cause to arrest him or reasonable, articulable suspicion to stop him under *Terry v. Ohio*, 392 U.S. 1 (1968). Because Mr. Brefford satisfied his initial burden to show the traffic stop of his bicycle was a warrantless seizure, the burden then shifted to the state to show that the warrantless seizure of Mr. Brefford was justified. *See Xenia* at 220. The state argued the initial encounter between Mr. Brefford and Sergeant Dover was consensual. During the course of this consensual encounter, Sergeant Dover gained reasonable suspicion that Mr. Brefford was engaged in criminal activity, thus premising the lawfulness of Mr. Brefford's prolonged detention on *Terry*.

{¶ 21} At the June 1, 2023 suppression hearing, the state presented testimony from Officer D.S. and Sergeant Dover about the stop, prolonged detention, and search of Mr. Brefford. The prosecutor played recordings from the officers' body-worn cameras,

which depicted their interaction with Mr. Brefford. The following was established at that hearing.

{¶ 22} On July 21, 2022, around 2:40 p.m., Officer D.S. and Sergeant Dover were patrolling the area of Kimball Place and East Fulton Street in Columbus when they observed a group of individuals congregating in the area. (*See* June 1, 2023 Tr. at 10, 57-58.) The officers were in uniform and in a marked cruiser, and Officer D.S. was driving. Officer D.S. testified about ongoing concerns of criminal activity in the area, explaining they "had been in that area previously a week or two prior, made several arrests, several guns and a lot of narcotics taken from there" and were told by a first shift officer about "a lot of activity" going on in the area that day involving some of the people they had just recently arrested. (June 1, 2023 Tr. at 10-14, 39-40.) Officer D.S. and Sergeant Dover both testified as to their familiarity with the neighborhood, describing it as a "high crime" area. (*See* June 1, 2023 Tr. at 12-13, 40-42.)

{¶ 23} As they were driving through the area, Officer D.S. and Sergeant Dover observed Mr. Brefford sitting stationary on his bicycle in the roadway, thus impeding traffic. After driving around Mr. Brefford, the officers observed him make an illegal U-turn in the roadway and walk his bicycle onto the sidewalk. Although Mr. Brefford was not ultimately cited for these traffic offenses, the fact they were committed is not in dispute. (*See* June 1, 2023 Hearing Ex. B1.)

{¶ 24} The officers stopped in front of a house known for conducting drug and firearm dealing operations to approach people in the area but did not activate their cruiser's sirens or lights. (June 1, 2023 Tr. at 40.) Officer D.S. recognized someone he had "attempted to get a gun off of a week or two prior" and attempted to stop him. (June 1, 2023 Tr. at 10-16.)

{¶ 25} In the interim, Sergeant Dover approached Mr. Brefford, who was shirtless, on the sidewalk to "address[] the safety concerns associated with [him] having been stationary in the roadway and doing a 'U-turn.' " (June 1, 2023 Hearing Ex. J. *See also* June 1, 2023 Tr. at 42-43.) At the suppression hearing, Sergeant Dover testified he did not order Mr. Brefford to stop on initial approach, as he intended it to be a "causal encounter." (June 1, 2023 Tr. at 42-43.)

{¶ 26} As depicted in his body-worn camera footage from the stop, Sergeant Dover walked up to Mr. Brefford on the sidewalk and told him: "Hey, man, you know you can't be

[stopped] in the street like that. You've got to be riding that bike. . . . You stopped, turned around, all that craziness." (June 1, 2023 Hearing Ex. B1.) Mr. Brefford responded by claiming he was asking someone for directions. (June 1, 2023 Hearing Ex. B1.) Sergeant Dover further advised Mr. Brefford "to think about you being a car—like, when we pulled up behind you, we technically have to stop because you're in the middle of the street. So us, we have to wait for your, you're impeding our traffic." (June 1, 2023 Hearing Ex. B1.)

{¶ 27} Sergeant Dover testified that when he approached Mr. Brefford, he immediately smelled "a strong odor of raw marijuana coming from his person." (June 1, 2023 Tr. at 42-44.) Thus, after addressing his roadway safety concerns, Sergeant Dover asked Mr. Brefford if he had any marijuana on him, explaining he was "smelling a bunch of marijuana coming off of you." (June 1, 2023 Hearing Ex. B1.) Mr. Brefford denied having any marijuana in his possession three times. (June 1, 2023 Hearing Ex. B1; June 1, 2023 Tr. at 43-44.) In his report, Sergeant Dover described that, upon questioning about marijuana, Mr. Brefford "immediately became visibly nervous" and "nearly motionless" while looking away from him. (June 1, 2023 Hearing Ex. J.) On review, we note that Sergeant Dover's body-worn camera footage is consistent with that description.

{¶ 28} Sergeant Dover explained that, based on the "overwhelming" odor of raw marijuana coming from Mr. Brefford's person and being in a "high crime" and "high drug" area, he decided to prolong the stop to investigate. (June 1, 2023 Tr. at 43-45.) Sergeant Dover also noted that Mr. Brefford was wearing a regular backpack on his back and a smaller belt bag on his chest. This was significant to him because, as he explained during the hearing, based on his training and experience, "people who sell narcotics will keep the money and/or gun in the front [smaller] pack and the drugs in the [larger] back[pack], so if they had to run from the police or somebody else, they could drop the drugs and keep the money and the gun." (June 1, 2023 Tr. at 44-45.)

{¶ 29} For these reasons, Sergeant Dover told Mr. Brefford to "hang tight" and he was "not free to go." (June 1, 2023 Hearing Ex. B1.) After a couple of seconds, Mr. Brefford suddenly stood up from the bicycle he had been sitting on "as if he was going to leave," so Sergeant Dover grabbed the top of Mr. Brefford's backpack by its handle and repeatedly told him to stop moving. (June 1, 2023 Hearing Ex. B1; June 1, 2023 Tr. at 46.) Mr. Brefford asked Sergeant Dover to "let him go," and Sergeant Dover again reiterated Mr. Brefford was not free to leave. (June 1, 2023 Hearing Ex. B1; June 1, 2023 Tr. at 46.)

Sergeant Dover reached across Mr. Brefford's chest, patted the small bag, and asked him what he had inside of it. (June 1, 2023 Hearing Ex. B1; June 1, 2023 Tr. at 46.) Mr. Brefford then placed his bicycle on the ground and began pushing his body into Sergeant Dover, causing them both to move backwards off of the sidewalk and into the street. (*See* June 1, 2023 Hearing Ex. B1, J; June 1, 2023 Tr. at 46.)

{¶ 30} A struggle ensued, as described more fully below, during which a firearm fell from Mr. Brefford's person onto the ground. After a few minutes, Officer D.S. and Sergeant Dover were able to contain Mr. Brefford and place him under arrest. Following his arrest, officers searched both of Mr. Brefford's bags. Several small baggies of marijuana and a scale were recovered from the smaller belt bag. Officers also recovered several large baggies of marijuana, crack cocaine, and money from Mr. Brefford's backpack.

{¶ 31} Following the suppression hearing, the trial court issued a written decision denying Mr. Brefford's motion to suppress. The court found the officers had a lawful reason to stop Mr. Brefford due to the traffic violations, and Sergeant Dover's interaction with Mr. Brefford went from being a consensual encounter to a lawful investigatory stop.

{¶ 32} On appeal, Mr. Brefford does not contest that Sergeant Dover's initial approach was either a lawful traffic stop or began as a consensual encounter about safety concerns. Instead, Mr. Brefford challenges the validity of Sergeant Dover's decision to conduct an investigatory *Terry* stop based on, among other things, the odor of raw marijuana.

{¶ 33} In contrast to a consensual encounter, a warrantless seizure of a person may be justified as a product of a brief investigatory stop under *Terry*. To justify a *Terry* stop, a law enforcement officer must point to specific, articulable facts that gave rise to a reasonable suspicion that the suspect was engaged in criminal activity. *Terry*, 392 U.S. at 21. *See also State v. Tidwell*, 2021-Ohio-2072, ¶ 19-21.

{¶ 34} Reasonable suspicion exists when, based on the totality of the circumstances, a police officer has a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). "Reasonable suspicion entails some minimal level of objective justification, 'that is, something more than an inchoate and unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause.' " *State v. Jones*, 2010-Ohio-2854, ¶ 17 (10th Dist.), quoting *State v. Jones*, 70 Ohio App.3d 554, 556-57 (2d Dist. 1990). "In

evaluating reasonable suspicion to support the propriety of a stop, a reviewing court must consider the totality of the circumstances surrounding the stop as 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' " *State v. McCandlish*, 2012-Ohio-3765, ¶ 7 (10th Dist.), quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991). *See also Terry* at 21-22.

{¶ 35} On review of the record and assuming the encounter began as consensual, we conclude the consensual nature ended when Sergeant Dover first told Mr. Brefford to "hang tight" and that he was "not free to go." (June 1, 2023 Hearing Ex. B1.) Mr. Brefford's primary contention is that the odor of marijuana, alone, can no longer be inherent evidence of criminal activity justifying an investigatory stop.

{¶ 36} Mr. Brefford's argument concerns the continued application of the Supreme Court's holding in *Moore*, 90 Ohio St.3d at 47, decided in 2000. In *Moore*, the court certified the following issue for review: "[i]s the odor of ***burnt*** marijuana, alone, sufficient to provide probable cause to search a defendant's ***motor vehicle***." (Emphasis added.) *Id.* at 48. The *Moore* court broadly held that "the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement." *Id.* By affirming the trial court's decision to deny the motion to suppress, the *Moore* court also held that "exigent circumstances existed to justify the warrantless search of defendant's person once [law enforcement] had probable cause based upon the odor of marijuana detected on the defendant," who was the sole occupant of the vehicle. *Id.*

{¶ 37} When *Moore* was decided in 2000, marijuana (cannabis) could not be legally possessed or used in any form in Ohio. But, at the time of the stop in this case, it could be legally possessed and used in certain circumstances. This is because the Ohio General

Assembly legalized medical marijuana[2] and hemp[3] prior to July 21, 2022. On appeal, Mr. Brefford postures that *Moore*'s core inference—the mere odor of cannabis provides inherent evidence of criminal activity—is no longer viable under the current legislative framework. We do not need to reconcile *Moore*'s holding with these legislative enactments, however, in order to resolve this case.

{¶ 38} It is true that Sergeant Dover could not ascertain the legality of raw marijuana from its plain smell alone. Nonetheless, the record before us shows that, based on the totality of the circumstances, he had a reasonable articulable suspicion of criminal activity justifying the *Terry* stop of Mr. Brefford. Before Sergeant Dover told Mr. Brefford he was not free to leave, Mr. Brefford denied having marijuana three times. Given Mr. Brefford's repeated denial—in the face of the strong and overwhelming odor of raw marijuana Sergeant Dover smelled—it would be reasonable to conclude that marijuana was being illegally possessed. Indeed, notwithstanding the legalization of hemp and medical marijuana, some forms and uses of marijuana remain illegal in Ohio. *See*, *e.g.*, *State v. Wright*, 2024-Ohio-1763, ¶ 23 (1st Dist.). Thus, at a minimum, an officer's detection of the odor of marijuana can be a contributing factual circumstance relevant to an officer's decision to conduct a *Terry* stop in order to investigate the legality of the substance that is the source of the odor. *See id.* at ¶ 24 (observing that "[i]n other jurisdictions where some forms of marijuana or hemp are legal, courts have held that the smell of marijuana . . . alone

---

[2] Effective September 8, 2016, medical marijuana became legal in Ohio. *See* 2016 Sub.H.B. No. 523 ("House Bill 523"). Medical marijuana is "cultivated, processed, dispensed, tested, possessed, or used for a medical purpose." R.C. 3796.01(A)(2). R.C. 3796.06 and Adm.Code 3796:7-2-05 set forth the framework for how a person can lawfully possess and use prescribed marijuana plant material. R.C. 3796.06(A)(3) allows possession of prescribed marijuana plant material. However, while a person holding a valid marijuana license can possess plant marijuana, Adm.Code 3796:7-2-05(G)(2) requires medical marijuana to be maintained only in the containers approved in subsection (G). Adm.Code 3796:7-2-05(E) also requires that medical marijuana be kept "in a secure location so as to prevent theft, loss, or access by persons not authorized" to possess medical marijuana. If an officer observes marijuana that is not stored in accordance with these requirements, the officer could reasonably infer the marijuana is illegally possessed (even if it was legitimate medical marijuana). *See*, *e.g.*, *State v. Burke*, 2022-Ohio-2166, ¶ 37 (2d Dist.). In addition, if an officer smells burnt marijuana, or a person admits to smoking marijuana, the officer could reasonably infer illegality notwithstanding the possibility that the person under investigation had a medical marijuana license. Although R.C. 3796.06(A)(3) allows for the possession of medical marijuana "[p]lant material," section (B)(1) of the statute prohibits "[t]he smoking or combustion of medical marijuana." The odor of burnt marijuana is indicative of smoking and therefore a violation of R.C. 3796.06(B)(1). *See*, *e.g.*, *State v. Grant*, 2022-Ohio-2601, ¶ 22 (2d Dist.); *State v. Caldwell*, 2021-Ohio-3777, ¶ 19 (12th Dist.).

[3] Effective July 30, 2019, hemp became legal in Ohio. *See* 2019 Am. Sub.S.B. No. 57. "Hemp" is defined as cannabis containing a delta-9 tetrahydrocannabinol ("THC") concentration of not more than 0.3 percent on a dry weight basis. R.C. 928.01(C).

is insufficient to establish probable cause" to justify a search or an arrest) (Citation omitted.). But, significantly here, evidence and testimony presented at the suppression hearing established that Sergeant Dover's decision to detain Mr. Brefford for further investigation was not based ***solely*** on his detection of the odor of marijuana emanating from Mr. Brefford's person.

{¶ 39} In addition to describing an "overwhelming" and "***strong*** odor of raw marijuana coming from [Mr. Brefford's] person," Sergeant Dover testified that his knowledge about the crime and drug activity associated with the area of the encounter, both historically and from earlier that same day, informed his decision to conduct an investigatory stop of Mr. Brefford. (Emphasis added.) (June 1, 2023 Tr. at 42-43.) Specifically, Sergeant Dover described a "known gang" conducting a "known operation for drug dealing and selling weapons" in the area. (*See* June 1, 2023 Tr. at 39-41, 46.) He also described receiving information from an officer patrolling the area in an unmarked vehicle earlier that day about observing "what he believed to be multiple hand-to-hand drug transactions" and "multiple individuals with firearms." (June 1, 2023 Tr. at 40.)

{¶ 40} Along with Mr. Brefford's presence in front of a known drug house, Sergeant Dover testified that his knowledge about the common use of bicycles and two bags by persons selling drugs further contributed to his belief that Mr. Brefford was involved in criminal activity. (*See* June 1, 2023 Tr. at 40.) As depicted in the body-worn camera footage, Mr. Brefford was riding a bicycle while wearing a large backpack on his back and a smaller belt bag across his chest. Sergeant Dover testified that, based on his training, education, and experience, he knew "persons who are selling illegal narcotics often conceal them in backpacks and or 'man-purses' and often do so using bicycles as a means of transportation." (June 1, 2023 Hearing Ex. J.)

{¶ 41} Furthermore, in his police report, Sergeant Dover described Mr. Brefford becoming "visibly nervous" and "nearly motionless" when asked whether he had marijuana in his possession. (*See* June 1, 2023 Hearing Ex. J.) Although some degree of nervousness during interactions with police officers is not uncommon, nervous behavior is a factor that can reasonably indicate, in conjunction with other circumstances, the possibility of illegal activity. *See, e.g., State v. Atchley*, 2007-Ohio-7009, ¶ 14 (10th Dist.).

{¶ 42} Given these facts and circumstances, we agree with the trial court's finding that, at a minimum, Sergeant Dover had reasonable suspicion for extending the stop in

order to investigate whether criminal activity was afoot. *See, e.g., State v. Vega*, 2018-Ohio-4002, ¶ 17-18. In view of the fact that Sergeant Dover had reasonable suspicion of criminal activity before Mr. Brefford attempted to flee—due to his perceived odor of raw marijuana on Mr. Brefford's person, the high-crime area, and Mr. Brefford's demeanor, appearance, and repeated denials regarding marijuana—we thus conclude the court did not err in denying Mr. Brefford's motion to suppress.

{¶ 43} For these reasons, we overrule Mr. Brefford's first assignment of error.

## B. Third Assignment of Error: Ineffective Assistance of Counsel

{¶ 44} In his third assignment of error, Mr. Brefford argues he received ineffective assistance of counsel. However, because he fails to establish he was prejudiced by trial counsel's deficient performance under *Strickland v. Washington*, 466 U.S. 668 (1984), we must overrule this assignment of error, for the reasons that follow.

### 1. Controlling Law and Standard of Review

{¶ 45} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) counsel's performance was deficient or objectively unreasonable, as determined by " 'prevailing professional norms,' " and (2) counsel's deficient performance prejudiced the defendant. *State v. Spaulding*, 2016-Ohio-8126, ¶ 77, quoting *Strickland* at 694.

{¶ 46} To show trial counsel's performance was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 689. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic decisions, even if unsuccessful, do not generally constitute ineffective assistance of counsel. *State v. Frazier*, 61 Ohio St.3d 247, 255 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989).

{¶ 47} Prejudice results when " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Bradley* at 142, quoting *Strickland*, 466 U.S. at 694. " 'A reasonable probability is a

probability sufficient to undermine confidence in the outcome.' " *Bradley* at 142, quoting *Strickland* at 694.

{¶ 48} When analyzing an ineffective assistance of counsel claim, an appellate court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland* at 697. *See also State v. Wade*, 2021-Ohio-4090, ¶ 19 (10th Dist.). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland* at 697. In determining a claim of ineffective assistance of counsel, our review is limited to the record before us. *See State v. Prophet*, 2015-Ohio-4997, ¶ 32 (10th Dist.).

### 2. Analysis

{¶ 49} Mr. Brefford asserts his trial counsel was ineffective in failing to move for discharge on statutory speedy trial grounds and for failing to object to the trial court's answer to a jury question regarding the carrying a concealed weapon count. But because we find, for the following reasons, that Mr. Brefford failed to establish he was prejudiced by trial counsel's purported failures, we find no merit to his ineffective-assistance-of-counsel claim.

### a. Failure to move for discharge on statutory speedy trial grounds

{¶ 50} Mr. Brefford first claims that his trial counsel's failure to move to dismiss his case under R.C. 2945.71 for violating his statutory speedy trial rights constituted ineffective assistance of counsel.

{¶ 51} "A criminal defendant has a right to a speedy trial under the Ohio Revised Code, the Ohio Constitution, and the Fifth and Sixth Amendments to the United States Constitution." *State v. Adams*, 2015-Ohio-3954, ¶ 80. That right is codified in R.C. 2945.71. In this case, Mr. Brefford only contends that his trial counsel was ineffective for failing to move for discharge of the case based on statutory speedy trial grounds.

{¶ 52} Under R.C. 2945.71(C)(2), the state is required to bring a defendant charged with a felony offense to trial within 270 days of their arrest. Generally, the speedy trial time period begins the day after a defendant's arrest. *See, e.g., State v. Kadunc*, 2016-Ohio-4637, ¶ 10 (10th Dist.); *State v. Juarez-Hernandez*, 2012-Ohio-4835, ¶ 8 (10th Dist.). *See*

*also* Crim.R. 45(A); R.C. 1.14. Each day the defendant is held in jail in lieu of bail counts as three days in computing this time. R.C. 2945.71(E).

{¶ 53} Statutory speedy trial time may be waived by the defendant or tolled by operation of law. These " '[t]wo key concepts direct how a court must charge the days when calculating a potential speedy trial violation.' " *State v. Williams*, 2023-Ohio-1002, ¶ 16 (10th Dist.), quoting *State v. Brown*, 2019-Ohio-4753, ¶ 28 (10th Dist.). If a defendant knowingly and voluntarily waives his speedy trial rights, the days included in the waiver period do not count toward the deadline for bringing the defendant to trial. *See, e.g., State v. Adams*, 43 Ohio St.3d 67, 69 (1989), citing *State v. Kidd*, 60 Ohio App.2d 374, 376 (1st Dist. 1978), and *State v. O'Brien*, 34 Ohio St.3d 7, 9 (1987). Further, a plea of guilty waives a defendant's right to challenge his or her conviction on statutory speedy trial grounds. *See, e.g., State v. Kelley*, 57 Ohio St.3d 127, 130-31 (1991); *State v. Johnson*, 2016-Ohio-5904, ¶ 18 (10th Dist.).

{¶ 54} R.C. 2945.72 provides an exhaustive list of specifically enumerated events that automatically extend the statutory speedy trial time by tolling the time period during which that event occurs. *See, e.g., State v. Ramey*, 2012-Ohio-2904, ¶ 24. Although a defendant's waiver of speedy trial time requires an intentional relinquishment of a known right that must be expressed in writing or made in open court on the record, the tolling of speedy trial time under R.C. 2945.72 occurs by operation of law and, thus, extends the speedy trial time "whether or not a waiver has been executed." *State v. Blackburn*, 2008-Ohio-1823, ¶ 18. *See also Juarez-Hernandez* at ¶ 9.

{¶ 55} If a defendant is not brought to trial within the statutory speedy trial time frame mandated by R.C. 2945.71 and 2945.72, the felony charges are subject to discharge under R.C. 2945.73.[4] *See* R.C. 2945.73.

---

[4] Effective April 4, 2023, the Ohio General Assembly amended R.C. 2945.73 in a manner that changed the procedure for handling situations where a defendant is not brought to trial within the 270-day statutory time limit. *See* 2022 Am.Sub.S.B. No. 228. Prior to the amendment, R.C. 2945.73(B) provided that: "Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." Former R.C. 2945.73(D) further provided that "such discharge is a bar to any further criminal proceedings against [the accused] based on the same conduct."

However, under the amended version of R.C. 2945.73(C), a defendant who is not brought to trial for a ***felony*** offense within the statutory time limit "is eligible for release from detention" (as opposed to being discharged from criminal liability). R.C. 2945.73(C)(1). The statute provides that such defendant must be

{¶ 56} In this case, Mr. Brefford was arrested on July 21, 2022. Thus, the statutory speedy trial period began to run on July 22, 2022. Ultimately, his trial commenced on September 5, 2023, which far exceeded the 270-day speedy trial time period prescribed by R.C. 2945.71(C)(2). However, Mr. Brefford's trial counsel did not file a motion to dismiss based on a speedy trial violation. To prove ineffective assistance of counsel, he must show his trial counsel's failure to file such motion was ineffective.

{¶ 57} When a claim of ineffective assistance of counsel is based on counsel's failure to file a particular motion, a defendant must show that the motion had a reasonable probability of success. *State v. Boddie*, 2011-Ohio-3309, ¶ 10 (10th Dist.), citing *State v. Barbour*, 2008-Ohio-2291, ¶ 14 (10th Dist.), citing *State v. Adkins*, 2005-Ohio-2577 (4th Dist.).

{¶ 58} Mr. Brefford does not attempt to count days for purposes of calculating speedy trial time against tolling events on appeal. On review of the record, we note there are numerous events that would toll (or stop) the counting of days under R.C. 2945.72, including the defense's multiple continuance requests, Mr. Brefford's withdrawn guilty plea in case No. 22CR-3372 (stemming from the same events and charges filed in case No. 23CR-2226), pretrial motions filed by the defense, and any other reasonable continuance granted other than upon Mr. Brefford's own motion. There may also have been other reasons for the statutory speedy trial time limits to be tolled or extended that are not apparent from the record before us. However, because Mr. Brefford did not timely file a motion to dismiss alleging a statutory speedy trial violation in the trial court, the state had no reason or opportunity to support its basis for delay on the record or to otherwise argue why the state believed any statutory tolling events should apply. *See Boddie* at ¶ 11.

---

brought to trial within 14 days after his or her motion to dismiss on speedy trial grounds is filed and served upon the prosecutor. R.C. 2945.73(C)(2). If no motion is filed, the defendant must be brought to trial within 14 days after the trial court determines the statutory speedy trial time limit has expired. *Id.* Only if the defendant's case is not tried within that 14-day grace period are the defendant's criminal charges to be dismissed with prejudice. *Id.* The 14-day grace period can be extended at the request of the accused or due to the fault or misconduct of the accused. *Id.*

The foregoing amendment to R.C. 2945.73 went into effect while Mr. Brefford's case was pending. Case law suggests the former version of R.C. 2945.73 would have applied to Mr. Brefford's case. *See*, *e.g.*, *State v. Knott*, 2024-Ohio-2289, ¶ 47-54 (2d Dist.). But we need not determine this issue since its resolution is not germane to our analysis of the ineffective assistance of counsel claim presented here.

{¶ 59}  Based on the record before us, we find Mr. Brefford has failed to demonstrate that a motion to dismiss based on a violation of his statutory speedy trial rights had a reasonable probability of success—as was *his* burden.  Because Mr. Brefford has not shown there was a reasonable probability that a motion to dismiss would have been successful, he has failed to demonstrate that trial counsel was ineffective for failing to file such a motion.  Thus, he fails to satisfy the prejudice prong of *Strickland* with respect to this claim.

### b. Failure to object to the trial court's answer to jury's question about the carrying a concealed weapon jury instruction

{¶ 60}  Mr. Brefford next argues his counsel's agreement with the trial court's answer to a jury question about the carrying concealed weapon count constituted ineffective assistance of counsel.  Specifically, Mr. Brefford argues the court's answer to that question does not contain a correct statement of law.  We disagree.

{¶ 61}  The purpose of jury instructions is to properly guide the jury in deciding questions of fact based on the applicable substantive law.  *See*, *e.g.*, *State v. Griffin*, 2014-Ohio-4767, ¶ 5.  Although a trial court "has broad discretion to decide how to fashion jury instructions," the trial court must " 'fully and completely' " give the jury all instructions that are " 'relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.' " *State v. White*, 2015-Ohio-492, ¶ 46, quoting *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus.  Jury instructions must therefore "present a correct, pertinent statement of the law that is appropriate to the facts" of the case.  *Id*.  *See also Marshall v. Gibson*, 19 Ohio St.3d 10, 12 (1985).  In the absence of an objection to the trial court's response to a jury question, a party waives all but plain error.  *See*, *e.g.*, *State v. Long*, 53 Ohio St.2d 91, 93-97 (1978); *State v. Owens*, 2020-Ohio-4616, ¶ 7; Crim.R. 30(A) and 52(B).

{¶ 62}  Further, "where, during the course of its deliberations, a jury requests further instruction, or clarification of instructions previously given, a trial court has discretion to determine its response to that request." *State v. Carter*, 72 Ohio St.3d 545, 553 (1995).  *See also State v. Preston-Glenn*, 2009-Ohio-6771, ¶ 28 (10th Dist.) ("It is within the sound discretion of the trial court to provide supplemental instructions in response to a question from the jury.").  "The trial court's response to a jury's question, when viewed in its entirety, must be a correct statement of law and be consistent with or supplement the instructions previously given to the jury." *State v. Jones*, 2017-Ohio-1168, ¶ 17 (10th Dist.), citing

*Preston-Glenn* at ¶ 28. Generally, we review a trial court's response to a jury's question for an abuse of discretion. *Id*. at ¶ 17. Although an abuse of discretion is typically defined as an unreasonable, arbitrary, or unconscionable decision, *State v. Beavers*, 2012-Ohio-3654, ¶ 8 (10th Dist.), no court has the authority, within its discretion, to commit an error of law. *State v. Akbari*, 2013-Ohio-5709, ¶ 7 (10th Dist.), citing *State v. Beechler*, 2010-Ohio-1900, ¶ 70 (2d Dist.).

{¶ 63} Here, Mr. Brefford argues his trial counsel was ineffective for failing to object to the court's answer to the jury's third question regarding the carrying a concealed weapon count. To evaluate this assignment of error, then, we must determine whether the court's response to this question resulted in the jury being instructed on an incorrect statement of law.

{¶ 64} To convict Mr. Brefford of carrying a concealed weapon, the state had to prove Mr. Brefford knowingly carried or had, concealed on his person or concealed ready at hand, a handgun other than a dangerous ordnance. *See* R.C. 2923.12(A)(2).

{¶ 65} Evidence presented at trial established Mr. Brefford was not wearing a shirt at the time of the incident. The officers testified that when they first encountered Mr. Brefford on his bike in the roadway, they drove by his left side. Moreover, Sergeant Dover acknowledged that when he exited his cruiser to have a conversation with Mr. Brefford on the sidewalk, he approached Mr. Brefford on his left side. And Sergeant Dover agreed he did not see any firearm on Mr. Brefford's person in either instance and he did not know where the firearm came from. (Sept. 6, 2023 Tr. at 92-97.) Mr. Brefford testified that he was carrying the gun on the right side of his waistband, that it was sticking out of his waistband, and "clearly visible." (Sept. 6, 2023 Tr. at 152.) Notably, the jury was provided with Officer D.S. and Sergeant Dover's body-worn camera footage depicting their encounter with Mr. Brefford. And on review of that footage, we are not able to observe a firearm in Mr. Brefford's waistband leading up to the investigatory stop.

{¶ 66} The trial court initially provided the following instruction to the jurors in the context of the elements of the carrying a concealed weapon offense: "A deadly weapon is concealed when it is out of sight or so hidden that it cannot be seen by ordinary observation by others near enough to see it. It is a question of fact for you, the jury, to decide whether or not it is concealed. A deadly weapon need not be entirely hidden to be considered

concealed." (Sept. 6, 2023 Tr. at 256.) Regarding the "knowingly" element, the trial court instructed the jury, in relevant part, as follows:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result. A person has knowledge of circumstances when a person is aware that such circumstances probably exist.
>
> When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

(Sept. 6, 2023 Tr. at 246-47.) Neither party objected to any of the instructions provided by the court.

{¶ 67} After the jurors retired to deliberate, they sent three questions to the trial court regarding the carrying concealed weapon count. The question at issue here asked: "The concealed carried weapon [instruction] states the defendant has to know they are concealing it. If he doesn't know he was concealing it, then does the charge not apply?" (Sept. 6, 2023 Tr. at 269.) The trial court conferred with counsel for Mr. Brefford and the state regarding the appropriate response. Ultimately, with the assent of both parties, the court gave the following response to the jury: "Your question starts with an incorrect statement of law. In the law regarding carrying a concealed weapon, Count 5, knowingly applies to carried or had as in knowingly carried or knowingly had." (Sept. 6, 2023 Tr. at 269-70.)

{¶ 68} Mr. Brefford argues the trial court's response to the third jury question contained an inaccurate statement of law and thus, his trial counsel was ineffective for failing to object to it. Specifically, Mr. Brefford asserts that R.C. 2923.12 requires the state to prove he knowingly ***concealed*** the weapon—not just that he knowingly ***carried*** or ***had*** the weapon. In support, he cites to a 1983 decision from another Ohio appellate district court finding that "[t]he gist of the [carrying concealed weapon] offense is *knowing concealment*, not mere knowledge or mere possession." (Emphasis in original.) *State v. Kline*, 11 Ohio App.3d 208, 216 (6th Dist. 1983). (*See* Appellant's Brief at 34.) Thus, he contends his trial counsel should have objected to the trial court's impermissible modification of the necessary elements of the concealed carry offense.

{¶ 69} However, we need not address the deficient performance prong of *Strickland*. *See Strickland*, 466 U.S. at 697. Even if we were to agree with Mr. Brefford that his trial counsel was deficient in failing to object to the trial court's response to the jury question at issue here, we nonetheless would find he has failed to satisfy his burden on appeal of showing a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different. Without prejudice, we do not need to consider the adequacy of trial counsel's performance. *See*, *e.g.*, *Strickland* at 697; *Wade*, 2021-Ohio-4090, at ¶ 19 (10th Dist.).

{¶ 70} As noted above, we do not consider the answers to juror questions in isolation and instead must consider the charge to the jury as a whole. *See*, *e.g.*, *State v. Rutledge*, 2019-Ohio-3460, ¶ 49 (10th Dist.). Mr. Brefford has not assigned as error the instructions provided to the jury ***prior*** to deliberations, including the jury instruction on carrying a concealed weapon. The jury charge given by the court prior to deliberations stated the statutory elements of carrying a concealed weapon and defined the term "knowingly." (*See* Sept. 6, 2023 Tr. at 246-47, 255-57.) In those instructions, the jury was told that a deadly weapon is concealed when it is "so hidden that it cannot be seen by ordinary observation by others near enough to see it" and that it "need not be ***entirely hidden*** to be considered concealed." (Emphasis added.) (Sept. 6, 2023 Tr. at 256.) And Mr. Brefford does not challenge the propriety of this instruction on appeal.

{¶ 71} "Whether a weapon is carried so that ordinary observation would give notice of its presence is a question of fact to be resolved by the trier of fact." *State v. Gamble*, 2021-Ohio-4089, ¶ 10 (10th Dist.), citing *State v. Coker*, 15 Ohio App.3d 97 (9th Dist. 1984). Here, Mr. Brefford testified to placing the gun in the waistband of his pants without a holster. (Sept. 6, 2023 Tr. at 152, 158.) It follows, then, that Mr. Brefford knew the weapon was at least ***partially*** concealed. And, on review of Sergeant Dover's body-worn camera footage, we note that Mr. Brefford appears to be wearing at least ***three*** types of garments on his lower extremities: a pair of light grey sweatpants (outer layer, sagging below the waist), a solid black pair of shorts, boxers, or pants (middle layer, at the waist), and a blue-and-white plaid pair of boxers, shorts or pants (inner layer, at the waist). At trial, Mr. Brefford did not specify which of these three or more layers he had his firearm tucked into. And we note the firearm he was carrying was predominately black, which would blend in with the middle layer of solid black shorts, boxers, or pants Mr. Brefford was wearing.

{¶ 72} The jury could have viewed these facts as proving Mr. Brefford had knowledge that, at a minimum, he was ***partially*** concealing the firearm when he placed it partway into one of the layers of his lower-extremity garments. Further, the jury could have found that the portion of the black gun allegedly sticking out from Mr. Brefford's waistband blended with the middle layer of clothing—black shorts or pants—he was wearing. Concealed in this manner, the gun's existence may not have been visible upon ordinary observation, and thus was sufficiently concealed so as to constitute a violation of R.C. 2923.12. Moreover, the jury was free to reject Mr. Brefford's testimony claiming the firearm was tucked in his waistband and "clearly visible." (*See* Sept. 6, 2023 Tr. at 152.) *See, e.g.*, *State v. Ramirez*, 2019-Ohio-4591, ¶ 30-31 (10th Dist.). Indeed, the evidence presented at trial did not definitively establish where the firearm was located before his physical altercation with Sergeant Dover, during which the firearm fell from Mr. Brefford's person onto the ground. (*See, e.g.*, Trial Ex. A1 at 2:29; Sept. 6, 2023 Tr. at 97.)

{¶ 73} We have repeatedly recognized that "a partially concealed weapon constitutes a 'concealed' weapon within the meaning of R.C. 2923.12." (Citations omitted.) *State v. Walker*, 2005-Ohio-6365, ¶ 84 (10th Dist.). This is because " 'the evident purpose of R.C. 2923.12(A) is to ensure that anyone who comes into contact with a person who is armed with a deadly weapon will be aware of the fact that they are so armed. Thus aware, the individual can act with a heightened degree of prudence.' " *Gamble* at ¶ 10, quoting *State v. Curry*, 1996 Ohio App. LEXIS 4949 (2d Dist. Nov. 15, 1996). " '[A] weapon is concealed if it is so situated as not to be discernable by ***ordinary observation*** by those near enough to see it were it not concealed, who would come into contact with the possessor in the usual associations of life.' " (Emphasis added.) *Id.*, quoting *State v. Pettit*, 20 Ohio App.2d 170, 173-74 (4th Dist. 1969). This means that " '[a] weapon need not be completely invisible to be concealed for purposes of R.C. 2923.12.' " *Walker* at ¶ 84, quoting *State v. Graham,* 1998 Ohio App. LEXIS 506 (10th Dist. Feb. 10, 1998) (Close, J., dissenting.), citing *State v. Almalik*, 41 Ohio App.3d 101 (8th Dist. 1987), and *Coker* at 97. *See also Pettit* at 174, citing *Shipley v. State*, 243 Md. 262 (1966) ("[A]bsolute invisibility is not required, since ***ordinary observation*** does not extend to a search unusually careful, thorough or detailed, made because of suspicion that contraband which is not visible by ordinary observation may in actuality be present.") (Emphasis added.)

{¶ 74} We also note that, in response to the jury's first question—inquiring whether carrying a firearm "on someone's waist is . . . considered 'concealed' "—the trial court directed the jury to refer back to the written instructions, specifically the paragraph regarding concealment of a deadly weapon, which, again, has not been challenged on appeal. (*See* Sept. 6, 2023 Tr. at 268, referencing Sept. 6, 2023 Jury Instructions at 10-11.) Further, the court declined to provide the jury with "examples of carrying a gun without 'concealing' it," as requested by the jury's second question to the court. (*See* Sept. 6, 2023 Tr. at 269.) Thus, when the court's instructions to the jury in response to all three questions are read in context, and not in isolation, we find the court's response to the third jury question was consistent with the instructions previously given. *See, e.g.*, *Rutledge*, 2019-Ohio-3460, at ¶ 49 (10th Dist.); *Jones*, 2017-Ohio-1168, at ¶ 20 (10th Dist.); *Preston-Glenn*, 2009-Ohio-6771, at ¶ 29 (10th Dist.).

{¶ 75} In sum, Mr. Brefford admitted to partially concealing a firearm when he testified about tucking it into his waistband without a holster. Evidence and testimony presented at trial—including Officer D.S. and Sergeant Dover's testimony and body-worn camera footage—established that the firearm was " 'so situated as not to be discernable by ***ordinary observation*** by those near enough to see it were it not concealed.' " (Emphasis added.) *Gamble*, 2021-Ohio-4089, at ¶ 10 (10th Dist.), quoting *Pettit*, 20 Ohio App.2d at 173-74. As such, the evidence presented at trial established Mr. Brefford knowingly carried or had on his person or ready at hand a "concealed weapon" within the meaning of R.C. 2923.12.

{¶ 76} For these reasons, we find that Mr. Brefford has failed to establish he was prejudiced by trial counsel's failure to object to the trial court's response to the jury question at issue and, thus, is unable to demonstrate he received ineffective assistance of trial counsel under *Strickland*.

{¶ 77} Having found that Mr. Brefford failed to establish he was prejudiced by either of trial counsel's purported failures, we overrule Mr. Brefford's third assignment of error.

### C. Fourth Assignment of Error: Insufficient Evidence and Manifest Weight

{¶ 78} In his fourth assignment of error, Mr. Brefford argues the evidence presented at trial was insufficient to support his convictions for aggravated robbery, assault with a

firearm specification, and carrying a concealed weapon. He also contends these convictions were against the manifest weight of the evidence. For the following reasons, we disagree.

### 1. Legal Standard and Standard of Review

{¶ 79} Whether evidence is sufficient as a matter of law to support a conviction involves a determination of whether the state met its burden of production at trial. *See, e.g.*, *State v. Smith*, 2004-Ohio-4786, ¶ 16 (10th Dist.); *State v. Frazier*, 2007-Ohio-11, ¶ 7 (10th Dist.); *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). We do not weigh the evidence but instead determine " 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard*, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 80} In evaluating a sufficiency challenge, we assume the state's witnesses testified truthfully and determine whether that testimony and any other evidence presented at trial satisfied each element of the offense. *See State v. Watkins*, 2016-Ohio-8272, ¶ 31 (10th Dist.), quoting *State v. Hill*, 2008-Ohio-4257, ¶ 41 (10th Dist.). Thus, evidence is sufficient to support a conviction where, if believed, that evidence would allow any rational trier of fact to conclude that the state proved each element of the offense beyond a reasonable doubt. *Frazier* at ¶ 7, citing *Jenks* at paragraph two of the syllabus.

{¶ 81} In contrast, a manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion. *See, e.g.*, *State v. Richey*, 2018-Ohio-3498, ¶ 50 (10th Dist.), citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 11-13, citing *Thompkins* at 386-87. "Although evidence may be sufficient to sustain a guilty verdict, the issue of manifest weight requires a different type of analysis." *State v. Walker*, 2003-Ohio-986, ¶ 43 (10th Dist.). " '[W]eight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other.' " *State v. Petty*, 2017-Ohio-1062, ¶ 60 (10th Dist.), quoting *State v. Boone*, 2015-Ohio-2648, ¶ 49 (10th Dist.), citing *Thompkins* at 387.

{¶ 82} When considering an appellant's claim that a conviction is against the manifest weight of the evidence, this court sits as a "thirteenth juror" and may disagree "with the factfinder's resolution of the conflicting testimony." *Thompkins*, 78 Ohio St.3d at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). *See also State v. Martin*, 2022-Ohio-4175, ¶ 26. In making this determination, we must examine the entire record, weigh the

evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *See, e.g., Sparre v. Ohio Dept. of Transp.*, 2013-Ohio-4153, ¶ 10 (10th Dist.); *Eastley* at ¶ 20; *Thompkins* at 387; *Martin* at ¶ 26.

{¶ 83} Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding credibility of witnesses and the weight of testimony are primarily for the trier of fact. *See, e.g., State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus; *Morris v. Ohio Dept. of Rehab. & Corr.*, 2021-Ohio-3803, ¶ 64 (10th Dist.), citing *Watson v. Ohio Dept. of Rehab. & Corr.*, 2012-Ohio-1017, ¶ 31 (10th Dist.), citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc.* at 80.

{¶ 84} To reverse a jury verdict as being against the manifest weight of the evidence, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required pursuant to Article IV, Section 3(B)(3) of the Ohio Constitution. *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶ 2-4, citing *Thompkins* at paragraph four of the syllabus.

### 2. Analysis

{¶ 85} Mr. Brefford argues his convictions for aggravated robbery, assault with a three-year firearm specification, and carrying a concealed weapon are not supported by sufficient evidence or, in the alternative, are against the manifest weight of the evidence. We disagree.

### a. Aggravated Robbery

{¶ 86} In order to convict Mr. Brefford of aggravated robbery, the state had to prove that he knowingly, without privilege to do so, removed, attempted to remove, deprived, or attempted to deprive a known law enforcement officer, who was acting within the course and scope of the officer's duties, of a deadly weapon. R.C. 2911.01(B). According to R.C. 2901.22(B), "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that

such circumstances probably exist." Additionally, a defendant acts knowingly, when, although not intending the result, he or she is nevertheless aware that the result will probably occur. *State v. Edwards*, 83 Ohio App.3d 357, 361 (10th Dist. 1992).

{¶ 87} Here, testimony and body-worn camera footage established that after Sergeant Dover informed Mr. Brefford he was not free to leave, Mr. Brefford stood up from the bicycle he had been sitting on. (Sept. 6, 2023 Tr. at 76.) Sergeant Dover "took that as a sign that he might be trying to flee," so he immediately grabbed ahold of the top strap of the backpack on Mr. Brefford's back and began patting down the smaller belt bag Mr. Brefford was wearing across his chest. (Sept. 6, 2023 Tr. at 76, 95-96.) At this point, Mr. Brefford put his bicycle on the ground, turned his back to Sergeant Dover, and began pushing up against him while Sergeant Dover was still holding onto the top handle of Mr. Brefford's backpack. (Sept. 6, 2023 Tr. at 76-77, 96; Trial Ex. B1.) The two men began to struggle, with Sergeant Dover ultimately pulling Mr. Brefford to the ground. (*See* Sept. 6, 2023 Tr. at 77-79, 96; Trial Ex. B1.) In the midst of the struggle, Sergeant Dover observed a firearm fall onto the ground a few feet in front of him and yelled out "gun," and Officer D.S. ran over to assist. (Sept. 6, 2023 Tr. at 29-30, 77-79, 96-97; Trial Ex. B1.) Mr. Brefford struggled with officers for several minutes before they were able to place him in handcuffs.

{¶ 88} The body-worn camera footage showed Mr. Brefford attempting to get back up from the ground and moving toward the firearm while officers attempted to control him on the ground. Ultimately, Mr. Brefford was able to gain control of the firearm in his left hand. (*See* Sept. 6, 2023 Tr. at 29-30, 79-81, 98-101; Trial Ex. B1.) Officer D.S. pinned Mr. Brefford's left hand down and attempted to seize the firearm but Mr. Brefford "was consistently putting pressure in an upward position that would move the firearm towards us if we let go of holding his arm down." (Sept. 6, 2023 Tr. at 81. *See also* Sept. 6, 2023 Tr. at 30-33, 99-100.) Officer D.S. and Sergeant Dover made multiple attempts at prying the firearm from Mr. Brefford's left hand, with Mr. Brefford "using his right hand to try to pull [Officer D.S.'s] left arm off of his" and otherwise attempting to keep the firearm away from them. (*See* Sept. 6, 2023 Tr. at 30-33, 79-81, 99-100; Trial Ex. A1; Trial Ex. B1.) Both Officer D.S. and Sergeant Dover testified they believed Mr. Brefford was attempting to use it on them at that time. (*See* Sept. 6, 2023 Tr. at 30-32, 79-81, 99-100.) Officer D.S. further testified that even after he was able to remove the firearm from Mr. Brefford's left hand,

Mr. Brefford reached over with his right hand and attempted to pull the firearm away from him. (Sept. 6, 2023 Tr. at 32-33.)

{¶ 89} After Officer D.S. peeled the firearm out of Mr. Brefford's left hand, Mr. Brefford continued struggling with officers while they attempted to get him under control. Officer D.S. testified that Mr. Brefford "kept reaching underneath his body towards the backpack" with his right hand, which was concerning because the officers did not know if Mr. Brefford had any other weapons on his person. (Sept. 6, 2023 Tr. at 33-34.) Officer D.S. was holding the firearm he had just seized from Mr. Brefford in his right hand, out away from him, while Mr. Brefford was "kicking and flailing about and swinging his arms and trying to reach for things" with his right arm. (Sept. 6, 2023 Tr. at 33.) Officer D.S. grabbed Mr. Brefford's right arm with his left hand and used his right hand—still holding the firearm—to hold Mr. Brefford's right leg down when Mr. Brefford moved his left leg in toward him, causing Officer D.S.'s right hand to be caught in between Mr. Brefford's legs. (*See* Sept. 6, 2023 Tr. at 33-34; Trial Ex. A1.) Officer D.S. testified that Mr. Brefford "immediately closed his thighs and squeezed against my [right] hand and began to stretch his body out and push down with his thighs while applying pressure on both sides of my hand and trying to pull the gun out of my hand with his thighs." (Sept. 6, 2023 Tr. at 34.) After Sergeant Dover struck Mr. Brefford, Officer D.S. was able to remove his right hand with the gun from between Mr. Brefford's legs and give it to another officer who had arrived for backup. (Sept. 6, 2023 Tr. at 33-35; Trial Ex. A1.) Mr. Brefford continued to struggle, eventually requiring four officers to get him in handcuffs.

{¶ 90} Evidence presented at trial established that the firearm seized from Mr. Brefford was operable and loaded. It follows, then, that the state proved the seized firearm was a "deadly weapon" as defined in R.C. 2923.11(A) as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

{¶ 91} Viewing this evidence in the light most favorable to the state, as we must on a sufficiency of the evidence review, we find the evidence is sufficient for a rational trier of fact to conclude that Mr. Brefford knowingly, without privilege to do so, removed, ***attempted*** to remove, deprived, or ***attempted*** to deprive a known law enforcement officer, who was acting within the course and scope of the officer's duties, of a deadly weapon. We likewise cannot say the jury clearly lost its way and created a manifest

miscarriage of justice in crediting the state's evidence and finding Mr. Brefford guilty of aggravated robbery under R.C. 2911.01(B). *See*, *e.g.*, *DeHass*, 10 Ohio St.2d 230 at paragraph one of the syllabus; *Morris*, 2021-Ohio-3803, at ¶ 64 (10th Dist.), citing *Watson*, 2012-Ohio-1017, at ¶ 31 (10th Dist.), citing *Seasons Coal Co.*, *Inc.*, 10 Ohio St.3d at 80.

{¶ 92} Notwithstanding our finding that Mr. Brefford violated the elements of aggravated robbery, as enumerated in R.C. 2911.01(B), we believe it is prudent to note how this application of the law distorts the crime of aggravated robbery. By virtue of its name, the offense of aggravated robbery presupposes robbery, which in turn, presupposes a theft. There can be no robbery, as defined in R.C. 2911.02(A), absent theft or attempted theft. In the present case, however, Mr. Brefford has been convicted of aggravated robbery for his attempt to wrest ***his own gun*** back from police during his arrest.

{¶ 93} Ohio law defines theft as "knowingly obtain[ing] or exert[ing] control over" the property of another. R.C. 2913.02(A). Robbery is theft with an additional element: the use or threat of force, physical harm, or the possession of a "deadly weapon." R.C. 2911.02(A). Similarly, aggravated robbery is generally understood to be theft with an additional element: the possession of a "deadly weapon" and the use or threat of its use; the possession of a "dangerous ordnance," which consists of a wide range of illegal weapons and explosives; or attempting to or actually inflicting serious physical harm on another. R.C. 2911.01(A). *See* R.C. 2923.11(K) (defining "dangerous ordnance"). However, as applicable here, the aggravated robbery statute also provides an alternate definition of an aggravated robbery offense that ***does not require*** any showing of a theft or an alleged theft. Instead, R.C. 2911.01(B) provides:

> No person, without privilege to do so, shall knowingly remove or attempt to remove a deadly weapon from the person of a law enforcement officer, or shall knowingly deprive or attempt to deprive a law enforcement officer of a deadly weapon, when both of the following apply:
>
> (1) The law enforcement officer, at the time of the removal, attempted removal, deprivation, or attempted deprivation, is acting within the course and scope of the officer's duties;
>
> (2) The offender knows or has reasonable cause to know that the law enforcement officer is a law enforcement officer.

{¶ 94} In previous appeals involving the application of R.C. 2911.01(B), the "deadly weapon" at issue was the police officer's **own** service weapon. *See, e.g., State v. Byrd*, 2004-Ohio-7127, ¶ 3 (1st Dist.) (appellant "tried to remove [the officer's] sidearm from its holster"); *State v. Kincaid*, 2002-Ohio-6116, ¶ 3 (9th Dist.) (appellant "tried to remove an officer's revolver from the holster"); *State v. Ramsey*, 2014-Ohio-4881, ¶ 6 (11th Dist.) (officer "noticed that [appellant's] hand was on [the officer's] firearm"); *State v. Scruggs*, 2000 Ohio App. LEXIS 850, *2 (10th Dist.) ("[a]ppellant grabbed the end of [the officer's] rifle"); *State v. Coleman*, 2014-Ohio-856, ¶ 4 (2d Dist.) (officer "testified that he could feel [appellant] tugging at the handgun [the officer] kept holstered on his belt"); *State v. Crespo*, 2024-Ohio-5192, ¶ 3 (7th Dist.) ("[a]ppellant took the officer's service weapon and fled"); *State v. Hathorn*, 2023-Ohio-3936, ¶ 32 (3d Dist.) (officer "testified that [appellant] had grabbed ahold of [the officer's] taser"); *State v. Neal*, 2004-Ohio-6823, ¶ 6 (4th Dist.) (appellant "grabbed the asp baton out of [the officer's] hand"); *State v. Evans*, 2002-Ohio-3322, ¶ 109 (10th Dist.) ("[t]o prove aggravated robbery, the prosecution had to demonstrate that appellant knowingly attempted to remove the deputy sheriff's weapon").

{¶ 95} On review of cases applying R.C. 2911.01(B), it does not appear that any Ohio appellate court or the Supreme Court has ever squarely determined whether R.C. 2911.01(B) applies when a defendant attempts to regain control over his **own** deadly weapon. In our view, it appears the legislature's effort to protect police officers from the **theft** or attempted theft of their **own service weapons** in R.C. 29011.01(B) was not intended to apply in circumstances like those presented here. Indeed, if this provision of the statute is construed as divorcing an aggravated robbery offense charged under R.C. 2911.01(B) from the element of theft—as it is written—then the state would be free to charge a vast array of conduct as an aggravated robbery.

{¶ 96} For instance, a person stopped for a traffic violation could inform a police officer that he has a firearm in his locked glove compartment but decline the officer's request to conduct a warrantless search of his vehicle. This could arguably constitute a knowing "attempt to deprive a law enforcement officer of a deadly weapon." R.C. 2911.01(B). Or, a person who is detained while lawfully carrying a firearm in his holster could be charged with violating R.C. 2911.01(B) if that person steps to the side or turns around while an officer is attempting to remove that gun from him. It is difficult to accept

that the legislature intended to enact a statute so broadly written that such conduct would render a person guilty of aggravated robbery, a first-degree felony.

{¶ 97} Nonetheless, it remains that the legislature saw fit to label the crime described in R.C. 2911.01(B) as aggravated robbery. In the absence of any ambiguity challenge to this provision by Mr. Brefford's counsel in the trial court or on appeal, we decline to address it. *See, e.g.*, *State ex rel. Twitchell v. Saferin*, 2018-Ohio-3829, ¶ 11 (O'Connor, C.J., concurring). And, having found that the evidence and testimony presented at trial satisfied all of the essential elements of that offense under R.C. 2911.01(B), we must affirm a conviction for "aggravated robbery" that involves neither robbery nor theft. Any concerns about the overbreadth of R.C. 2911.01(B)'s application must be affirmatively raised in litigation or otherwise left for our General Assembly to resolve.

### b. Assault and Accompanying Firearm Specification

{¶ 98} To convict Mr. Brefford of assault, the state had to prove that he knowingly caused or attempted to cause physical harm to Officer D.S. and/or Sergeant Dover. R.C. 2903.13(A). And because the assault count was charged with a three-year firearm specification, the state also had to prove Mr. Brefford had a firearm on or about his person or under his control while committing the offense and displayed a firearm, brandished a firearm, indicated he possessed a firearm, or used a firearm to facilitate the offense. R.C. 2941.145(A). As charged here, R.C. 2903.13(C)(5)(a) further provides that an assault offense is a fourth-degree felony if "[t]he victim of the offense is a peace officer . . . while in the performance of the officer's . . . official duties." There is no dispute that Sergeant Dover and/or Officer D.S. were peace officers acting in the performance of their official duties, as specified in this provision.

{¶ 99} Under R.C. 2901.01(A)(3), "[p]hysical harm to persons" refers to "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶ 100} Combined with the definition of "knowingly" found in R.C. 2901.22(B), assault under R.C. 2903.13(A) does not require a defendant intend to cause physical harm, but that the defendant acted with an awareness that the conduct probably will cause such harm. *See, e.g.*, *State v. Anderson*, 2010-Ohio-5561, ¶ 13 (10th Dist.). Further, the state is not required to prove that the officers were actually harmed, only that Mr. Brefford ***attempted*** to cause physical harm. *See* R.C. 2903.13(A).

{¶ 101} On appeal, Mr. Brefford argues that although he was intentionally struggling with the officers, his physical transgressions against the officers were not knowingly committed. (*See* Appellant's Brief at 43.) It is well-established, however, that potential or actual harm caused to officers by a defendant " 'flailing' to evade arrest is sufficient to support a conviction for knowingly causing harm or attempting to cause harm." *State v. Pierce*, 2023-Ohio-528, ¶ 26 (8th Dist.). *See also State v. Munoz*, 2013-Ohio-4987, ¶ 12 (10th Dist.) ("[w]hen flailing one's arms while in close proximity to another, it is probable that one will strike the other" and cause injury); *State v. Jones*, 2003-Ohio-3004, ¶ 57 (8th Dist.) ("by refusing to comply with police orders and submit to their authority when he was placed in the cruiser, the appellant possessed the requisite knowledge that his conduct, as demonstrated by his resistance, kicking, head butting, shoulder butting and flailing about, would probably cause a certain result").

{¶ 102} Contrary to Mr. Brefford's contention otherwise, the act of intentionally flailing one's limbs in close proximity to officers attempting to effectuate a lawful arrest is a knowing act. *See, e.g.*, *Edwards*, 83 Ohio App.3d at 361. Common sense dictates that intentionally swinging arms, kicking feet, and thrashing about when others are near the flailing limbs probably will result in physical harm to the other person. It is no different than intentionally discharging a firearm with no intent to actually harm anyone. Indeed, regardless of the shooter's subjective intent, under the letter of the law, the shooter committed the act knowingly. *See State v. Wilson*, 2024-Ohio-776, ¶ 24 ("Intentionally shooting toward or in the vicinity of another person when there is a risk of injury meets the 'knowingly' element of felonious assault.").

{¶ 103} As described above, the testimony and body-worn camera footage established that Mr. Brefford struggled with Officer D.S. and Sergeant Dover for several minutes while holding a firearm in his left hand and attempting to regain control of it after Officer D.S. wrested it out of his hand. The evidence also showed Mr. Brefford flailing about on the ground, kicking, grabbing the officers with his right hand, and squeezing Officer D.S.'s right arm with his thighs while Officer D.S. and Sergeant Dover were attempting to detain him. In addition, several times throughout the encounter, Mr. Brefford was told by officers to stop struggling, to let go of the gun, to get his hands away from them, and to stop resisting. These circumstances demonstrate knowledge on Mr. Brefford's part that his

conduct could cause injury to the officers who were on top of him and attempting to secure him in handcuffs.

{¶ 104} Mr. Brefford also contends that the state's evidence was not sufficient to find him guilty of the three-year firearm specification. Pursuant to R.C. 2941.145, the three-year firearm specification statute, an offender's sentence for the underlying offense is enhanced if the offender "displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." Our primary goal in construing any statute is " 'to ascertain and give effect to the intent of the legislature.' " *White*, 2015-Ohio-492, at ¶ 29, quoting *State v. Taylor*, 2014-Ohio-460, ¶ 14. Interpreting R.C. 2941.145 in *White*, the Supreme Court observed that "[t]he purpose of a firearm specification is to enhance the punishment of criminals who voluntarily introduce a firearm while committing an offense and to deter criminals from using firearms." *Id*. at ¶ 31. Therefore, in order for Mr. Brefford's sentence to be enhanced with a three-year firearm specification, the state was required to produce evidence showing that he displayed the firearm, brandished it, indicated that he possessed it, or used it to facilitate the assault offense.

{¶ 105} Here, Mr. Brefford grabbed the firearm that fell from his person during the altercation with officers, refused to let go of the firearm despite the officers' repeated commands to do so, attempted to point it in the direction of the officers, and tried to regain control of the firearm after Officer D.S. removed it from his hand. Both Officer D.S. and Sergeant Dover testified they believed Mr. Brefford was going to shoot them with the firearm during the altercation. (*See* Sept. 6, 2023 Tr. at 30-33, 77-81.) On review, we find the officers' body-worn camera footage reasonably supported that belief. Consistent with the guidance from the Supreme Court regarding the legislative intent behind the firearm-specification statute, we find the evidence presented in this case supported the jury's finding that Mr. Brefford displayed or brandished a firearm, indicated he possessed the firearm, or used the firearm to facilitate the assault offense under R.C. 2941.145(A).

{¶ 106} In light of the officers' testimony and body-worn camera footage, the distinction between sufficiency and manifest weight is not significant. Under any test, the evidence was both sufficient and credible, as the jury found, in order to prove Mr. Brefford guilty of the assault of Officer D.S. and/or Sergeant Dover. And for the reasons stated above, we likewise conclude the three-year firearm specification sentencing enhancement was supported by sufficient and credible evidence that Mr. Brefford had a firearm under

his control while committing the offense, and that Mr. Brefford displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

### c. Carrying a Concealed Weapon

{¶ 107} R.C. 2923.12 proscribes the offense of carrying a concealed weapon. Mr. Brefford was convicted of a violation of subsection (A)(2), which prohibits a person from knowingly carrying or having, concealed on the person's person or concealed ready at hand, a handgun other than a dangerous ordnance. R.C. 2923.12(A)(2).

{¶ 108} As described above, Mr. Brefford admitted to partially concealing a firearm when he testified about tucking it into the waistband of one of the three layers of clothing he was wearing at or below his waistline. (*See* Sept. 6, 2023 Tr. at 152-53, 158.) He also testified it was not secured in a holster. (Sept. 6, 2023 Tr. at 158.) The gun was mostly black and Mr. Brefford's middle layer of clothing—shorts or pants worn at his waist—was also black. Officer D.S. and Sergeant Dover testified they did not see a firearm on Mr. Brefford's person at any point before it fell to the ground, and no firearm on his person can be seen in either of their body-worn camera footage. (*See* Sept. 6, 2023 Tr. at 56-57, 97-98.) This evidence supports a reasonable inference that the firearm was " 'so situated as not to be discernable by ***ordinary observation*** by those near enough to see it were it not concealed.' " (Emphasis added.) *Gamble*, 2021-Ohio-4089, at ¶ 10 (10th Dist.), quoting *Pettit*, 20 Ohio App.2d at 173-74. Thus, the jury, as the trier of fact, could reasonably conclude that Mr. Brefford knowingly carried or had on his person or ready at hand a "concealed weapon" within the meaning of R.C. 2923.12.

{¶ 109} Again, the distinction between sufficiency and weight is not significant as to this offense. Under any test, the evidence was both sufficient and credible to prove, as the jury found, Mr. Brefford guilty of carrying a concealed weapon.

### d. Disposition

{¶ 110} Based on the foregoing, Mr. Brefford's contention that his convictions for aggravated robbery, assault with a firearm specification, and carrying a concealed weapon are not supported by sufficient evidence or, in the alternative, are against the manifest weight of the evidence is not well-taken.

{¶ 111} As such, we overrule Mr. Brefford's fourth assignment of error.

**D. Second Assignment of Error: Consecutive Sentences on Three Firearm Specifications**

{¶ 112} The trial court sentenced Mr. Brefford to an indefinite prison term of 3 to 4 and one-half years for robbery; a 1-year prison sentence for assault with a consecutive sentence of 3 years as to the firearm specification; a 6-month prison sentence for obstructing official business with a consecutive sentence of 3 years as to the firearm specification; a 6-month prison sentence for drug possession with a consecutive sentence of 1 year as to the firearm specification; and a 1-year prison sentence for carrying a concealed weapon. The court ordered all counts to be served concurrently to each other but consecutive to each specification, for a total aggregate prison term of 10 to 11 and one-half years.

{¶ 113} In his second assignment of error, Mr. Brefford contends the trial court should have merged mandatory prison sentences imposed for each of the three firearm specifications because they were based upon the same act or transaction. We disagree.

{¶ 114} R.C. 2953.08(G)(2) generally governs our review of felony sentences. *See, e.g., State v. Jones*, 2020-Ohio-6729, ¶ 26-42; *State v. Toles*, 2021-Ohio-3531, ¶ 7 (Brunner, J., concurring). Under that statute, we are permitted to modify or vacate a sentence only if we clearly and convincingly find either: (1) the record does not support the sentencing court's findings under certain statutes, including R.C. 2929.14(C)(4); or (2) the sentence is otherwise contrary to law. *Jones* at ¶ 30-39; R.C. 2953.08(G)(2).

{¶ 115} R.C. 2929.14(C)(4), the consecutive sentencing statute, applies to "multiple prison terms [that] are imposed on an offender for convictions of multiple ***offenses***." (Emphasis added.) A specification is a sentencing enhancement, not a separate criminal offense. *State v. Ford*, 2011-Ohio-765, ¶ 16. By its own terms, then, R.C. 2929.14(C)(4) does not apply to penalty enhancing specifications. And because firearm specifications are not separate offenses, they cannot be allied offenses of similar import for purposes of R.C. 2941.25, the allied offenses statute. *See, e.g., State v. Logan*, 2025-Ohio-1772, ¶ 9-12; *Ford* at ¶ 16-19.

{¶ 116} Because R.C. 2929.14(B)(1)(g) specifically applies to penalty enhancing specifications, this statute controls our analysis. That provision states, in relevant part:

> If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are . . . aggravated

robbery. . . and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

R.C. 2929.14(B)(1)(g).

{¶ 117} Thus, to prevail on his second assignment of error, Mr. Brefford must show the trial court plainly erred in imposing a prison sentence for all three firearm specifications. At sentencing, Mr. Brefford argued that merger was appropriate for the aggravated robbery, obstructing official business, assault, and carrying a concealed weapon counts. The state disagreed. In the alternative, Mr. Brefford asked the court to impose "concurrent sentences on the underlying felony [offenses] separate and apart from the firearm specification counts." (Oct. 11, 2023 Tr. at 302.) Ultimately, the court opted to take this route and thus made no findings on whether the offenses should merge for purposes of sentencing. (*See* Oct. 11, 2023 Tr. at 318-19.) And Mr. Brefford does not attribute any error to the court's failure to address the merger issue on appeal.

{¶ 118} The narrow issue before us, then, is the application of R.C. 2929.14(B)(1)(g). On appeal, Mr. Brefford argues R.C. 2929.14(B)(1)(g) should not apply because no firearm specifications were linked to the aggravated robbery count. Although aggravated robbery is listed in R.C. 2929.14(B)(1)(g)—which triggers the imposition of the "two most serious" firearm specifications—he contends it is unclear from the statute what a conviction of a firearm specification "in connection with two or more of the felonies" means.

{¶ 119} A court interpreting a statute must give effect to the legislature's intent. *Ayers v. Cleveland*, 2020-Ohio-1047, ¶ 17. Our starting point is the language of the statute itself. *Id.* "If the statute's language is plain and unambiguous, we apply it as written." *State v. Bollar*, 2022-Ohio-4370, ¶ 10. Only ambiguous language requires deciphering. *See Wingate v. Hordge*, 60 Ohio St.2d 55, 58 (1979). We may not create ambiguity or "modify an unambiguous statute under the guise of judicial interpretation." *State ex rel. Sears, Roebuck & Co. v. Indus. Comm.*, 52 Ohio St.3d 144, 148 (1990).

{¶ 120} R.C. 2929.14(B)(1)(g) is plain and unambiguous. It requires a trial court to sentence a defendant convicted of multiple firearm specifications to prison for the two most serious specifications if the defendant has been found guilty of at least two felony offenses and one of those offenses is specified in R.C. 2929.14(B)(1)(g). *See Bollar* at ¶ 19. However, R.C. 2929.14(B)(1)(g) does ***not*** dictate which firearm specification(s) a defendant in such situation must be convicted of in order for that provision to apply. Thus, in concluding that R.C. 2929.14(B)(1)(g) applies even when a firearm specification is not attached to one of the felony offenses listed in the statute, we give "effect to the legislature's intent by simply applying the law as written." *State v. Faggs*, 2020-Ohio-523, ¶ 15.

{¶ 121} Here, Mr. Brefford was convicted of two or more felonies—one of which included aggravated robbery—and multiple firearm specifications. Thus, according to the plain language of R.C. 2929.14(B)(1)(g), he must at least receive prison terms for the two most serious specifications for which he was convicted. Further, the trial court had discretion to impose a sentence on "any or all of the remaining specifications." R.C. 2929.14(B)(1)(g). Because the court was not required to make any findings before imposing, at its discretion, a consecutive prison sentence on the third firearm specification, we cannot conclude its imposition was contrary to law. Accordingly, we find no basis to conclude the court erred in imposing prison terms for all three firearm specifications in this case.

{¶ 122} Mr. Brefford also asserts that R.C. 2929.14(B)(1)(g) violates the double jeopardy protection against imposition of multiple punishments for the same offense. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb," applied to the states through the Fourteenth Amendment. The prohibition against double jeopardy "protects against three abuses": (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *State v. Ruff*, 2015-Ohio-995, ¶ 10.

{¶ 123} The Supreme Court has noted, however, that double jeopardy protections are not violated when the legislature specifically authorizes cumulative punishment. *Bollar*, 2022-Ohio-4370, at ¶ 20. The court further concluded that R.C. 2941.25, which implements double jeopardy protections, "does not override R.C. 2929.14(B)(1)(g), as the latter is the more specific and more recently enacted statute." *Id*. at ¶ 21. We are duty bound to follow

that ruling. Thus, even if any of the underlying offenses should have merged for purposes of sentencing, the Double Jeopardy Clause nonetheless permits cumulative punishment when the legislature has authorized it. *See Missouri v. Hunter*, 459 U.S. 359, 366 (1983) ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."). Thus, because a firearm specification survives merger under the plain language of R.C. 2929.14(B)(1)(g), as it is a penalty enhancement rather than a separate criminal offense, the imposition of a prison sentence on multiple firearm specifications, as authorized by R.C. 2929.14(B)(1)(g), did not run afoul of Mr. Brefford's constitutional protections against double jeopardy. *See, e.g., State v. Muhammad*, 2025-Ohio-1981, ¶ 9 (10th Dist.); *Ford*, 2011-Ohio-765, at ¶ 16-19.

{¶ 124} For these reasons, we overrule Mr. Brefford's second assignment of error.

## III. CONCLUSION

{¶ 125} Having overruled Mr. Brefford's four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

LELAND and DINGUS, JJ., concur.

————————————